Board of Supervisors of Upper Merion Township, Appellant v. McDonald's Corporation, Appellee.

Argued April 10, 1985, before President Judge CRUMLISH, JR., and Judges ROGERS, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Gregory J. Dean, Meneses & Dean, P.C.,* for appellant.

*J. Peirce Anderson,* with him, *David W. Moneymaker, Anderson, Narducci & Sullivan,* for appellee.

OPINION BY JUDGE ROGERS, August 22, 1985:

This is the appeal of the Board of Supervisors of Upper Merion Township from an order of the Court of Common Pleas of Montgomery County reversing the supervisors' refusal of a zoning curative amendment application presented by McDonald's Corporation pursuant to Section 609.1 of the Pennsylvania Municipalities Planning Code,[1] 53 P.S. §10609.1. The thesis of McDonald's Corporation, presented in its curative amendment application and in testimonial and documentary evidence adduced during the course of hearings conducted by the supervisors in March and April, 1983, is that the township's zoning regulations effect a total prohibition of an accessory use increasingly familiar to patrons of fast food restaurants, which use McDonald's denominates a "drive-thru" service.

As we will shortly explore, the name given to this use is pivotal to the legal analysis of this appeal. Setting aside the matter of names for the moment, the accessory use is a means by which patrons can purchase take-out food without leaving their automobiles and consists physically of a serving counter constructed in an exterior wall of the restaurant; a "menu board" including speakers and microphones for the placement and communication of food orders; and traffic lanes, markings, and signs directing patrons to the menu board and, thence, to the serving window.

---

[1] Act of July 31, 1968, P.L. 805, added by the Act of June 1, 1972, P.L. 333.

McDonald's finds an express prohibition of this accessory use in the following definition contained in the township's zoning ordinance:

Restaurant—A place where refreshments or meals are provided to order primarily to be eaten inside a building and secondarily or incidentally eaten on a patio connected thereto or carried away by the buyer. Not a 'drive-in' restaurant for the purpose of this ordinance.

The supervisors rejected McDonald's interpretation on the ground that the "drive-in" restaurant use excluded by the definition is different from the "drive-thru" accessory use proposed by McDonald's. This conclusion is supported by the distinction in language and by the legislative history which indicates that the exclusion of "drive-in" restaurants was enacted in the late 1960's at a time when "drive-in" restaurants were a familiar commercial enterprise involving service of food to patrons in their parked automobiles where the food was then consumed. This use is described by the Pennsylvania Supreme Court in *Food Corp. v. Zoning Board of Adjustment*, 384 Pa. 288, 121 A.2d 94 (1956).

As further support for their rejection of McDonald's exclusionary interpretation, the supervisors concluded that they were bound by a then recent decision of the township's zoning hearing board, affirmed by the Court of Common Pleas of Montgomery County, in the matter of an application by Gino's Corporation for permission to construct an accessory "drive-thru" facility in another of the township's zoning districts. On the question of whether the definitional exclusion set forth above prohibited an accessory drive-thru, the zoning hearing board had written:

The present application was to permit the construction of a convenience window on the property. The convenience window would fa-

cilitate take out service at the restaurant. A patron entering the premises would be directed to the rear of the existing building where a ground sign known as a 'menu board' and a speaker system would be installed. The patrons would make their selections and drive to the side of the building where a window would be installed. At this point, the patron would receive his purchase and pay for the same, never having to leave his car. The applicant indicated that this was 'drive-thru' service as opposed to a 'drive-in' service.

. . . .

The Board agrees with the applicant that the proposed facility is not in the nature of any traditional 'drive-in' restaurant where the patrons are served in their cars for consumption of the food on the premises.[2]

Thus, the supervisors concluded that the township's zoning regulations did not exclude throughout the municipality the "drive-thru" accessory use proposed by McDonald's and, therefore, that the prayer of McDonald's curative amendment petition must be refused.

As we have indicated, the court of common pleas reversed. Inasmuch as no evidence was received by the court below, our duty is to determine whether the findings of the supervisors are supported by substantial evidence and most pertinently whether the governing body erred in a matter of law. *Concord*

---

[2] The zoning board ultimately denied the variance requested by Gino's, Inc. from a provision found at Section 1000(C) of the Upper Merion Township Zoning ordinance prohibiting outdoor counter restaurant service in certain zoning districts including that in which the proposed drive-thru facility was to be located as well as the district containing the instant McDonald's restaurant.

*Township Appeal,* 439 Pa. 466, 268 A.2d 765 (1970).
We are guided by well-established precepts of ordinance construction including those codified by the
Statutory Construction Act of 1972, 1 Pa. C. S. §§1501-
1991. Among these is the principle that a zoning ordinance is presumed to be constitutionally valid and that
a judicial construction consonant with this presumption is to be preferred. *See* 1 Pa. C. S. §1922(3). *See
also Schubach v. Silver,* 461 Pa. 366, 336 A.2d 328
(1975). This principle militates strongly in favor of
the board of supervisors' interpretation.

The court of common pleas relied primarily on decisions of this court which it described as holding that
ambiguities in the terms of zoning ordinances must be
resolved in favor of the property owner, here McDonald's.[3] These authorities, strictly speaking, do not so
hold. They require zoning regulations to be interpreted in a fashion which will preserve rather than
constrict the landowner's use of his land. That is,
these authorities require the interpretation least restrictive of land use consistent with the zoning ordinance's terms. *Vagnoni v. Bridgeport Borough Council,* 420 Pa. 411, 218 A.2d 235 (1966); *Fidler v. Zoning
Board of Adjustment,* 408 Pa. 260, 182 A.2d 692 (1962).
In the instant case, this least restrictive interpretation
embraced by the supervisors would permit "drive-thru" restaurant uses in the township's other zoning
districts, albeit not in the district of McDonald's facility. We note, finally, that the supervisors concluded
that "drive-thru" service is, in actuality, simply a
species of take out service expressly permitted by the
ordinance. We agree with this conclusion.

---

[3] *See Appeal of Laurel Racing Association v. Zoning Hearing
Board, Municipality of Monroeville,* 73 Pa. Commonwealth Ct. 531,
458 A.2d 1043 (1983); *Abington Township v. Dunkin' Donuts Franchising Corp.,* 5 Pa. Commonwealth Ct. 399. 291 A.2d 322 (1972).

For these reasons we conclude that the interpretation of the supervisors was not in error and that the township's zoning ordinance does not expressly exclude the accessory use here proposed by McDonald's.[4]

On the occasion of this appeal, McDonald's presents the alternative argument that even if "drive-thru" facilities are permitted by the terms of the township's zoning ordinance, such facilities are, as a practical matter, excluded throughout the township. Support for this argument is sought in testimony of a general nature by McDonald's expert land planning witness and by a description in McDonald's written argument submitted to this court of the present development of those districts in which drive-thru facilities are permitted. The difficulty with this attack on the ordinance is that the record does not support, much less compel, the conclusion that placement of "drive-thru" accessory uses in other districts is in fact infeasible.

Specifically, McDonald's contends that its planning witness testified that a fast food restaurant could not successfully operate in the SM—suburban metropolitan zoning district where, as the supervisors concluded, such restaurants and their "drive-thru" accessories are permitted by the zoning ordinance. At

---

[4] Our resolution of this issue makes it unnecessary to decide the correctness of McDonald's implicit contention that the doctrine of exclusionary zoning applied to principal commercial uses by such cases as *Beaver Gasoline Co. v. Osborne Borough*, 445 Pa. 571, 285 A.2d 501 (1971); *Exton Quarries, Inc. v. Zoning Board of Adjustment*, 425 Pa. 43, 228 A.2d 169 (1967); *Moyer's Landfill v. Zoning Hearing Board of Lower Providence Township*, 69 Pa. Commonwealth Ct. 47, 450 A.2d 273 (1982); *Township of Paradise v. Mt. Airy Lodge, Inc.*, 68 Pa. Commonwealth Ct. 548, 449 A.2d 849 (1982); and *General Battery Corp. v. Zoning Hearing Board of Alsace Township*, 29 Pa. Commonwealth Ct. 498, 371 A.2d 1030 (1977), is also applicable to accessory commercial uses. We note that we are aware of no authority supportive of this contention.

the portion of the record referred to, however, McDonald's land planning witness merely testified that the location of a fast food restaurant within an office campus or industrial site would be "unlikely" due to the absence of attendant high traffic volume. The witness did not testify that fast food restaurants are either unlikely or infeasible as a principal use in a district developed in accordance with the SM use regulations.[5] The record does not support the inference

---

[5] Section 1150.

*Use Regulations.* A building may be erected, altered or used, and a lot may be used or occupied, for any of the following purposes and no others, provided that, prior to receiving a use and occupancy permit, it shall be shown by the applicant that the intended use will not be noxious, dangerous or otherwise offensive by reason of odor, dust, fumes, smoke, gas, radiation, vibration or noise.

A. Offices for administrative, executive, professional, sales and other similar uses, the normal attributes of which do not involve retailing activities on the premises.

B. Laboratory for scientific, agricultural or industrial research and development.

C. Restaurant, bank, hotel, private indoor athletic facility.

D. Wholesaling, warehousing and distributing, excluding the interior or exterior storage and sale of coal, lumber. petroleum distillates, or highly flammable materials.

E. Light manufacturing of beverages, confections, cream, all food products (exclusive of meat and fish packing), ceramics, clothing, plastics, electrical goods, furniture hardware, tools, dyes, patterns, scientific instruments, toys, cosmetics, tobacco products, drugs and products previously prepared of metallic and non-metallic materials.

F. A passenger station, terminal for public transportation, including heliport, when authorized as a Special Exception. and for heliport use upon due receipt of a copy of a license to operate from the site thereof issued by the Pennsylvania Aeronautics Commission. Any applicant for Special Exception for any of the above uses shall have the burden of showing to the satisfaction of the Zoning Hearing Board that provision is made to adequately reduce or minimize

McDonald's asks us to draw—that a drive-thru could not subsist in the SM district.

Similarly, McDonald's characterizes as "merit[ing] no comment at all" the feasibility of locating a fast food restaurant in another district—SM-1 suburban metropolitan district—because as counsel, not the record, tells us a sanitary sewage treatment facility is located in that district. We are not told, and there is no record evidence of, the size or topography of the SM-1 district, or the extent of other development of the SM-1 district; and there is no explanation of how any of these matters might affect the use of land within that district other than the tract on which the sanitary sewer facility is located.

We are constrained therefore to reverse the order of the court of common pleas.

ORDER

AND Now, this 22nd day of August, 1985, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is reversed.

Judge PALLADINO dissents.

---

the noxious, offensive, dangerous or hazardous feature or features thereof, as the case may be.

G. Any use of the same general character as any of the uses hereinbefore specifically permitted, when authorized as a Special Exception.