**SPRINT SPECTRUM L.P.**

v.

**ZONING HEARING BOARD OF WILLISTOWN TOWNSHIP and Board of Supervisors of Willistown Township.**

**No. Civ.A. 98–2184.**

United States District Court, E.D. Pennsylvania.

April 7, 1999.

Timothy W. Callahan, III, Elizabeth U. Witmer, Saul, Ewing, Remick & Saul, LLP, Philadelphia, PA, for Plaintiff.

Robert G. Hanna, Jr., Marshall, Dennehey, Warner, Coleman, Goggin, Harrisburg, PA, for Defendant.

## MEMORANDUM

DALZELL, District Judge.

Before us are the parties' cross-motions for summary judgment that involve the interplay of federal and state interests in the rapidly expanding field of cellular phone technology. For the reasons that follow, we will grant in part and deny in part both motions and will remand to the defendant Board of Supervisors for further proceedings.

### I. *Facts*

The parties agree on the basic facts. In August of 1997, plaintiff Sprint Spectrum L.P. ("Sprint") leased space at 5492 West Chester Pike in Willistown Township, Chester County, in order to construct a personal communications system ("PCS") base station. Sprint's proposed PCS base station would consist of an unmanned 150–foot tall tower with antennae and utility lines on it, with several refrigerator-size cabinets at its base to hold radio and power units.

The proposed PCS site is located in the "RU" (Rural) District of Willistown Township. Under the Township's zoning ordinance, the following uses are allowed in the RU district:

> Township or governmental use, bus passenger shelters, electric substations, utility line or similar use, including as a multiple use when authorized pursuant to Section 139–15(B).

Willistown Township, Pa., Zoning Ordinance § 139–12.E (Nov. 14, 1995).

On August 29, 1997, Sprint applied to the Township Zoning Officer for a determination that the proposed PCS radio station was a permitted conditional use of the property under the zoning ordinance. By letter dated September 18, 1997, the Zoning Officer denied Sprint's application, concluding that a "PCS radio base station and

a 150' tall monopole tower is not permitted in . . . the RU Zoning District." The Zoning Officer determined that Sprint's use would, however, be permitted in the RI (Restricted Industrial) District, under Section 139–73.A.(5) and (6) of the zoning ordinance as a use of the "same general character" as a consumer service facility.[1]

On October 9, 1997, Sprint appealed the Zoning Officer's decision to Willistown Township's Zoning Hearing Board ("ZHB"), arguing that the Zoning Officer had misinterpreted the zoning ordinance. Sprint also challenged the validity of the ordinance, because, it argued, if the Zoning Officer's interpretation were upheld, the ordinance would have the effect of excluding PCS towers from Willistown Township.

The ZHB held hearings on November 19, 1997, December 12, 1997, and January 14, 1998. On March 25, 1998, the ZHB denied Sprint's request to erect its PCS tower in the RU zone, and also denied its request to declare the zoning ordinance invalid. Sprint thereafter filed a complaint in this Court, seeking relief under the federal Telecommunications Act of 1996, 47 U.S.C. § 332 (West Supp.1998) ("TCA") and the Pennsylvania Municipalities Planning Code, 53 P.S. § 10101 et seq. (West 1997 and Supp.1998) ("MPC").

Also on October 9, 1997, Sprint filed an application with the Willistown Township Board of Supervisors ("Board of Supervisors" or "Board") for conditional use of the property pursuant to sections 139–12(E), 139–15(B), and 138–118.1 of the zoning ordinance.[2] On November 25, 1997, the Board of Supervisors held a meeting[3] at the Township's offices, after advertising that Sprint's conditional use application would be heard at the meeting. At the beginning of the meeting, the Township's attorney, Ronald Nagle, asked the Board to continue the hearing on Sprint's application until the ZHB heard and decided Sprint's appeal. Over Sprint's objection, the Board decided to continue the hearing. Sprint thereafter filed a complaint in this Court against the Board, again seeking relief under the TCA and the MPC.[4] On April 21, the Board reconvened and accepted for its record the ZHB decision. On June 2, in a written opinion, the Board denied Sprint's application, concluding that "Sprint is not entitled to conditional use approval of its proposed radio base station . . . as a multiple use pursuant to § 139–15.B. since Sprint's proposed use is not a permitted use [in the RU zone]," see June 2, 1998 Decision of Board of Supervisors of Willistown Township at 5.

The parties have filed cross-motions for summary judgment on both of Sprint's complaints.[5] As there are no genuine is-

---

1. Section 139–73.A.(5) allows the following uses in the "RI" (restricted industrial) zone:

   Consumer service facilities, including but not limited to facilities for repair of small appliances, dry cleaning and laundry, printing, binding and publishing, and similar services; provided that consumer service facilities shall not include gasoline service stations.
   Section 139–73.A.(6) permits "[a]ny use of the same general character" as any use specifically permitted in subsection (5).

2. Sprint needed this conditional use approval because its proposed PCS site was located on the same lot as Bobby's Seafood Restaurant. Section 139–15.B of the zoning ordinance provides that the Board of Supervisors must approve multiple uses on individual lots.

3. Our characterization of the November 25, 1997 gathering is vital to our determination of the parties' cross-motions for summary judgment. See part II, infra. At this point, we will refer to it only as a "meeting."

4. We consolidated Sprint's actions against the ZHB and the Board of Supervisors on May 18, 1998.

5. A summary judgment motion should be granted only if we conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R .Civ.P. 56(c). With a motion for summary judgment, the moving party bears the burden of proving that no genuine issue of material fact is in dispute, see Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10, 106 S.Ct.

sues of material fact in dispute, this case is ripe for summary judgment.

## II. *Sprint v. Board of Supervisors*

Sprint has moved for summary judgment against the Board of Supervisors, arguing that the Board failed to hold a timely hearing on Sprint's application for conditional use approval, in violation of both the TCA and the MPC, and therefore that Sprint is entitled to mandamus relief. Sprint bases its argument on the fact that the Board, at its November 25, 1997 gathering, decided to continue the hearing, without taking any testimony, until after the ZHB reached its decision on Sprint's appeal. The Board also has moved for summary judgment, arguing that its decision to continue the hearing and adopt the findings of the ZHB does not violate either federal or Pennsylvania law.

### A. *The TCA*

Congress adopted the TCA, 47 U.S.C. § 151 *et seq.*, which became law on February 8, 1996, to increase competition in the telecommunications industry. To this effect, it imposes significant limitations on the authority of state and local governments to regulate the placement of communications facilities. *See, e.g., Reno v. ACLU*, 521 U.S. 844, 117 S.Ct. 2329, 2337–38, 138 L.Ed.2d 874 (1997) (stating that the TCA's "primary purpose was to reduce regulation and encourage the rapid deployment of new telecommunications technologies" (internal quotation omitted)); *Paging, Inc. v. Board of Zoning Appeals*, 957 F.Supp. 805, 807 (W.D.Va.1997) (noting that "Congress passed the [TCA] in order to provide a procompetitive, deregulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and infor-

mation technologies and services to all Americans by opening all telecommunications markets to competition") (internal quotation omitted); *Sprint Spectrum L.P. v. Town of Easton*, 982 F.Supp. 47, 49 (D.Mass.1997) ("Although the TCA 'does not completely preempt the authority of state and local governments to make decisions regarding the placement of wireless communications service facilities within their borders,' it does impose significant limitations on this authority") (quoting *BellSouth Mobility, Inc. v. Gwinnett County*, 944 F.Supp. 923, 927 (N.D.Ga. 1996)).

The TCA provides that

A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

47 U.S.C. § 332(c)(7)(B)(ii). The purpose of this provision is to "stop local authorities from keeping wireless providers tied up in the hearing process." *Town of Easton*, 982 F.Supp. at 50, quoting *Westel–Milwaukee Co. v. Walworth County Park & Planning Comm'n*, 205 Wis.2d 244, 556 N.W.2d 107 (App.1996).

■ Sprint alleges that by continuing the hearing on Sprint's application for conditional use approval, the Board of Supervisors did not act "within a reasonable period of time" and therefore violated the TCA. Because, at least in this context, we interpret the TCA's "reasonable period of time" as congruent with the MPC's sixty-day time limit, *see infra* part B, we will analyze Sprint's claims under the TCA and

1348, 89 L.Ed.2d 538 (1986), and all evidence must be viewed in the light most favorable to the nonmoving party. *See id.* at 587, 106 S.Ct. 1348. Once the movant has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushi-*

*ta,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)) (emphasis omitted); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial).

the MPC according to the same standard, *see* discussion *infra* part C.

### B. *The MPC*

Under Pennsylvania's Municipalities Planning Code, 53 P.S. § 10101 *et seq.*, the Board of Supervisors was required to hold a hearing on Sprint's application for a conditional use permit within 60 days of Sprint's request for approval, or the application would be deemed to be approved. The MPC provides that:

> Where the governing body fails to . . . hold the required hearing within 60 days from the date of the applicant's request for a hearing, the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time.

53 Pa.Stat. § 10913.2(b)(2) (West 1997).

### C. *Analysis*

The issue under both statutes turns on whether we classify the November 25, 1997 gathering as a "hearing" or a "meeting." The Board argues that "[t]he initial Hearing did take place within sixty (60) days, but was continued pending the conclusion of the Zoning Hearing Board proceedings," Defs.' Reply Br. at 2, and therefore asserts that the Board satisfied the hearing requirements of the TCA and the MPC. Sprint argues that the Board was without power to postpone the hearing and that its doing so entitles Sprint to a deemed approval of its application.

The transcript of the November 25 gathering reveals that the Board spent significant time on Sprint's application. The Township's solicitor, Vince Pompo, stated at the outset that:

> Now, it occurred to me that this particular issue is an issue that is now pending before the Zoning Hearing Board and I contacted [counsel for Sprint] and we had a conversation about that because I was somewhat concerned as to whether the Board indeed could hear this appli-

cation since the matter was pending before the [ZHB].

Transcript of November 25, 1997 hearing at 4–5.

Addressing the solicitor's concerns, Ronald Nagle, an attorney for the Township, stated that:

> The application that has been filed to the Board of Supervisors essentially parallels in verbiage in substantial part the application that was filed to the Zoning Hearing Board.
>
> \*\*\*\*
>
> So as far as I can see the only thing before [the Board of Supervisors] is whether or not the multiple use should be permitted. That determination can't be made until the Zoning Hearing Board rules on Sprint's application.

What's going to happen in this proceeding is we're going to have a duplication of testimony, the same—primarily the same I would suspect from looking at the people who are here tonight as witnesses for Sprint as were testifying before the Zoning Hearing Board. I think this Board will be bound eventually by whatever the decision of the Zoning Hearing Board is with respect to whether or not, indeed, Sprint can convince that Board that the proposed use is a use allowed in the RU District. Until that happens, I think it is very unwise and, indeed, inappropriate for this Board to proceed.

You're going to have a duplication of effort. You're going to have the duplication of a transcript, and you have the potential for reaching different conclusions with respect to the evidence submitted to you. Therefore, I respectfully request the Board, having opened the record, to continue this matter not for an indefinite period of time, but until such time as the testimony is in before the Zoning Hearing Board and the Board renders a decision. Indeed, the record, the transcript which is now being made in that proceeding could be introduced by the applicant as an exhibit

in this proceeding without the necessity of our sitting here for two or three nights and hearing that same testimony over and over again.

Transcript of November 25, 1997 hearing at 7–10.

■ Based on this testimony, as well as the rest of the transcript of the November 25 gathering, we find that the Board of Supervisors fulfilled the hearing requirements in the TCA and the MPC. *Black's Law Dictionary* defines "hearing" as "a proceeding of relative formality (though generally less formal than a trial), generally public, with definite issues of fact or law to be tried, in which witnesses are heard and evidence presented." *Black's Law Dictionary* 721 (6th ed.1990). While it is true that the Board did not hear any evidence or testimony, there are twenty-three transcribed pages of debate about *whether* to hear testimony. The Board reasonably determined not only that hearing testimony would be a duplication of effort, but also that it was without jurisdiction over the matter. And the Board did not continue the hearing indefinitely, but only until the ZHB made its determination. We see no reason to penalize the Township for its efforts to avoid a duplication of effort. To grant a deemed approval to Sprint would be to make the Township a victim of circumstances.

The Pennsylvania Commonwealth Court reached a similar result in *Atlantic Richfield Co. v. City of Bethlehem*, 69 Pa. Cmwlth. 6, 450 A.2d 248, 252 n. 4 (1982). In *Atlantic Richfield*, the plaintiff argued that it was entitled to a deemed approval of its application for a zoning variance because the defendant's board failed to hold a hearing within the prescribed sixty-day period. The Commonwealth Court concluded that because the board formally convened for the purpose of a hearing,

there was technical compliance with the MPC and the plaintiff was not entitled to a deemed approval, even though the board *erroneously* decided that it did not need to hear testimony. *Cf. Penn Advertising, Inc. v. Kring*, 129 Pa.Cmwlth. 402, 565 A.2d 1238, 1240–41 (1989) (holding that an applicant for a zoning variance was not entitled to a deemed approval where a township board held a hearing within the sixty-day time period but failed to give notice of the hearing to applicant-plaintiff, and where the only action taken at the hearing was to continue it until a later date).

The Board's continuance of the hearing was not the result of procrastination nor was it a strategem to hold up the approval process. Rather, we find that it did so to avoid duplication of effort, jurisdictional problems, and inconsistent decisions. As such, Sprint is not entitled to a deemed approval because we find that the Board has to this modest extent satisfied the mandates of both the TCA and the MPC.[6]

We therefore will enter summary judgment in favor of the Board of Supervisors and against Sprint, but we will remand Sprint's application to the Board of Supervisors for early consideration of Sprint's application for multiple use approval in light of the discussion below.

III. *Sprint v. ZHB*

As discussed *supra* part I, the ZHB determined that Sprint could not erect a PCS station in the RU district and also denied Sprint's request to declare the Township's zoning ordinance invalid. The ZHB determined that the PCS station would, however, be permitted in the RI district. Thereafter, Sprint filed a complaint in this Court, alleging that the ZHB's decision violates the TCA and

6. We also note that the heading of the transcript of the November 25 gathering reads "hearing," and Mr. Nagle states that "the record has been opened and we have started a hearing, a formal hearing, and I don't think the Township is in any danger of a deemed approval." Transcript at 21. Thus, it appears that the Township *believed* that it was indeed holding a hearing, and we will not punish its procedural decision not to hear evidence.

Pennsylvania law. Sprint and the ZHB have filed cross-motions for summary judgment.

The first issue for us to consider is whether the ZHB's decision—that the PCS statio is not allowed in the RU district but is allowed in the RI district—is supported by substantial evidence in the written record. If it is not, then Sprint is entitled to summary judgment against the ZHB. If it is, then we must address Sprint's claims that the ZHB's decision "ha[s] the effect of" prohibiting personal wireless service in Willistown Township and "unreasonably discriminates among providers of functionally equivalent services." [7]

Under the TCA,

Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

47 U.S.C. § 332(c)(7)(B)(iii).

The ZHB determined that Sprint's proposed PCS station is not permitted in the RU district, but would be permitted in the RI district as a use "of the same general character" as a consumer service facility. Sprint alleges that this decision is arbitrary and capricious, and that the ZHB erred in interpreting the Township's zoning ordinance. The ZHB argues that its decision is supported by substantial evidence.

■ The Supreme Court explained, in the context of the deference to be afforded to NLRB findings, that "substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera*

*v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (internal quotations omitted). We apply the *Universal Camera* standard when determining if decisions under the TCA are supported by substantial evidence. *See, e.g.,* H.R.Conf. No. 104–458, at 208 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 223 (noting that we should employ "the traditional standard used for judicial review of agency actions"); *Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.3d 490, 493–94 (2d Cir. 1999) (citing the *Universal Camera* standard and H.R.Conf. No. 104–58); *Iowa Wireless Servs., L.P. v. City of Moline*, 29 F.Supp.2d 915, 921 (C.D.Ill.1998) ("In cases involving the TCA, courts have defined 'substantial evidence' to mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation omitted)); *Illinois RSA No. 3, Inc. v. County of Peoria*, 963 F.Supp. 732, 743 (C.D.Ill.1997) ("The [TCA] does not define the term 'substantial evidence,' but that term is derived from doctrines of administrative law and its meaning is well established.").

The standard of review is deferential to local zoning authorities, and we may neither engage in our own factfinding nor supplant the zoning authorities' reasonable determinations. *See Oyster Bay*, 166 F.3d at 494. We look at the record as a whole to determine whether there is substantial evidence to support the contention that the permits were denied on permissible grounds. *See id.* at 495, citing *American Textile Manufacturers Inst., Inc. v. Donovan*, 452 U.S. 490, 523, 101 S.Ct. 2478, 69 L.Ed.2d 185 (1981). When evaluating the evidence, local and state zoning laws govern the weight to be given to the it. *Id.*

---

7. The TCA provides that:

The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

47 U.S.C. § 332(c)(7)(b)(i).

■ Under Pennsylvania law, zoning ordinances are to be "interpreted in a fashion which will preserve rather than con-. strict the landowner's use of his land," and we should construe an ordinance in a manner which is the "least restrictive of land use consistent with the zoning ordinance's terms." *Board of Supervisors v. Mc-Donald's Corp.*, 91 Pa.Cmwlth. 299, 497 A.2d 264, 266 (1985); *see also Vagnoni v. Bridgeport Borough Council*, 420 Pa. 411, 218 A.2d 235 (1966); *Fidler v. Zoning Board*, 408 Pa. 260, 182 A.2d 692 (1962). "A court construing a zoning ordinance must afford permitted uses the broadest interpretation so that a landowner may have the benefit of the least restrictive use and enjoyment of his land." *Appeal of Heller*, 101 Pa.Cmwlth. 564, 516 A.2d 859, 861 (1986).

The ZHB determined that Sprint's proposed PCS station was not permitted in the RU district, which allows "Township or governmental use, bus passenger shelters, electric substations, [and] utility line or similar use." *See* Willistown Township, Pa., Zoning Ordinance § 139–12.E (Nov. 14, 1995). At the hearings before the ZHB, Sprint argued that its PCS tower is a use "similar" to an electric substation and a utility line and presented witnesses to support its argument. The ZHB rejected this argument, stating that they "do not find it to be similar to an electric substation or utility line." *See* March 25, 1998 Decision of the Zoning Hearing Board at 20.

According to § 139–6 of the zoning ordinance, an "electric substation" is "an assemblage of equipment for purposes other than generation or utilization, through which electric energy in bulk is passed for the purposes of switching or modifying its characteristics to meet the needs of the general public." The ZHB found that, although Sprint established that the cell site would house electrical equipment to provide power to transmit radio signals, there would be no "switching or modifying of the characteristics of electrical energy." *Id.* Because there was no electric energy at issue, the ZHB found that Sprint's proposed use was not similar to an electric substation. *Id.* at 21.

The zoning ordinance does not define "utility line." However, because the proposed PCS site involves "no lines, as would a sewer, water, electric or telephone system," the ZHB determined that the proposed use was not a "utility line." *Id.*

■ Sprint argues, and we agree, that the ZHB's decision that the proposed PCS site is unlike an electric substation and a utility line is not supported by substantial evidence. The ZHB seems to have overlooked the "similar use" language in the zoning ordinance and instead considered whether Sprint's use would be *identical* to that outlined in the ordinance. *See, e.g., id.* at 20–21 ("There is no switching or modifying of the characteristics of electrical energy involved here. Rather, the electrical equipment regenerates a radio signal which can be picked up without conversion by a subscribing customer's equipment. There is no electric energy at issue here, only radio signals. Thus, we find this use not to be 'similar' to an electric substation."). The ZHB ignored the testimony of Robert Smiley, Sprint's professional land planner, that, like an electric substation, the proposed PCS station (an "assemblage of equipment") is a "totally unmanned facility" that does not require water or sewer service and does not generate noise, odor, or light. *See* Transcript of November 19, 1997 hearing at 33. The ZHB's statement that the PCS site involves no electric energy also ignores the testimony of Jaime Rivera, Sprint's radio frequency design engineer, that the PCS site would transmit eight watts of power. *See* Transcript of November 19, 1997 Hearing at 97.[8] And the

---

8. We also note that Sprint's attorney, George Asimos, Jr., asked Smiley how, in his opinion, Sprint's proposed PCS site fit within the uses allowed in the RU district (specifically, how the site is similar to an electrical substation or utility line), but the Chairman of the ZHB

ZHB's finding that the PCS site was not similar to a utility line because it "involves no lines, as would a sewer, water, electric or telephone system," ignores Mr. Smiley's testimony that the PCS site, a telephone system, involves both telephone and electricity lines.

Regrettably, it appears from the record that the ZHB was construing the ordinance any way it had to in order to keep Sprint's PCS site out of the RU district, in violation of Pennsylvania's principles of ordinance interpretation. It employed a rigid interpretation of "electric substation" and "utility line," completely disregarding the "similar use" language in the ordinance and, in our opinion, violating Pennsylvania's principles of zoning ordinance interpretation. Affording the ZHB all the deference that *Oyster Bay* suggests we should, we find that the ZHB's decision was not supported by substantial evidence in the written record.

Furthermore, the ZHB's motion for summary judgement does not point out any way in which its decision was supported by substantial evidence. Instead, it recaps the proceedings before the ZHB, discusses the necessity and practicality of Sprint's proposed site, and asserts that "Sprint is not interested in serving Willis-

town Township" but merely wants coverage on major highways, *see* Def.'s Br. at 4–5. It fails to address how its interpretation of the zoning ordinance is supported by substantial evidence, and its arguments about the wisdom of Sprint's business decision is quite beside the point.

■ We also find that the ZHB's decision that the proposed PCS site is "of the same general character as a consumer service facility" and therefore is allowed in the RI district is not supported by substantial, or indeed any, evidence.[9] We can find no evidence in the record to support this conclusion, and we are at a loss to see how any "reasonable mind" could conclude that an unmanned cellular phone tower, which a consumer would never have reason to visit, is "of the same general character" as a laundromat, dry cleaner, or small appliance repair shop, which, as Sprint points out, are retail establishments that require employees, a building, parking, and utilities. The ZHB found that the PCS site is akin to a consumer service facility because it is "directed at the consuming public," *see* March 25, 1998 Decision of the Zoning Hearing Board at 23, but under this unconfinable rationale, everything from slaughterhouses to dynamite factories to reptile farms would be

sustained the objection of Ronald Nagle, special counsel for Willistown Township, that Smiley could not testify to the "ultimate issue." Then the following exchange occurred:

Asimos: I would like to point out that a land use planner needs to describe use, the land use planner needs to state an opinion as to whether a particular use is similar to another use. That's what a land use planner does. Only a land use planner knows. The attorneys and the Board can assess value of that comparison but a comparison needs to be made.

Chairman: I would suggest very strongly you don't make a presumption as to what this Board knows and what this Board doesn't know.

Asimos: It's not that, Mr. Chairman. Actually we have to have a record of our expert testimony.

Mr. Mancini: You have the record. We sustained [the objection]. Let's go on with the next question.

Transcript of November 19, 1997 Hearing at 40–41.

In sustaining Mr. Nagle's objection, the ZHB Chairman prevented Sprint from making the record necessary for the proper consideration of its application. He also deprived this Court of the benefit of Smiley's opinion, and we therefore will assume that Smiley's opinion would have been favorable to Sprint.

9. The zoning ordinance allows the following uses in the RI District:

Consumer service facilities, including but not limited to facilities for repair of small appliances, dry cleaning and laundry, printing, binding and publishing, and similar services; provided that consumer service facilities shall not include gasoline service stations.

Willistown Township, Pa., Zoning Ordinance § 139–73.A(5) (Nov. 14, 1995).

allowed in the RI District as a "consumer service facility." We can only conclude that the ZHB's expansive interpretation of the RI permitted uses, and its (at best) strained interpretation of RU permitted uses, shows that its goal was to deny Sprint's application at any cost, an object Congress proscribed in the TCA.

We therefore find that Sprint is entitled to summary judgment on its claim that the ZHB violated the TCA because its decision to deny Sprint's application is not supported by substantial evidence in the written record.

Because we find that the PCS site is a permitted use in the RU District, we need not reach Sprint's claims that the ZHB's decision has the effect of prohibiting the provision of personal wireless services and unreasonably discriminates among providers of functionally equivalent services.

### IV. *Remedy*

█ Courts have held that the appropriate remedy for violations of the TCA is injunctive relief in the form of an order to issue the relevant permits. *See, e.g., Oyster Bay*, 166 F.3d at 497; *Omnipoint Corp. v. Zoning Hearing Board*, 20 F.Supp.2d 875, 881–82 (E.D.Pa.1998); *Illinois RSA No. 3*, 963 F.Supp. at 747. Thus, we will direct the ZHB forthwith to approve Sprint's permitted use application. However, because a review of the Board of Supervisors' decision reveals that it did not consider whether Sprint's tower was authorized as a "conditional use," [10] we will remand to the Board of Supervisors to determine this question at an early date under § 139–15.B of the zoning ordinance, in light of, and consistent with, this opinion.

An Order follows.

10. The Board of Supervisors based its decision to deny multiple use approval on the ZHB's denial of Sprint's appeal. *See* June 2, 1998 Decision of the Board of Supervisors of Willistown Township at 5 ("Sprint is not enti-

*ORDER*

AND NOW, this 7th day of April, 1999, upon consideration of the parties, cross-motions for summary judgment, and the responses thereto, and for the reasons stated in the accompanying Memorandum, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is GRANTED IN PART and DENIED IN PART, in accordance with the following paragraphs;

2. Defendants' motion is GRANTED IN PART and DENIED IN PART, in accordance with the following paragraphs;

3. Defendant Zoning Hearing Board of Willistown Township shall by April 21, 1999 APPROVE Sprint Spectrum L.P.'s permitted use application;

4. By May 5, 1999, defendant Board of Supervisors of Willistown Township shall DETERMINE whether Sprint Spectrum's proposed use is a permitted multiple use under § 139–15.B of the Township zoning ordinance; and

5. The Clerk shall CLOSE this case statistically.

tled to conditional use approval of its proposed radio base station ... as a multiple use ... since Sprint's use is not a permitted use under § 139–12.E.").