**AMERICAN TOWER, L.P., a Delaware limited partnership, Respondent,**

**APT Minneapolis, Inc., a Delaware corporation, Plaintiff,**

v.

**CITY OF GRANT, Appellant.**

No. C1–00–786.

Court of Appeals of Minnesota.

Dec. 26, 2000.

Gary A. Van Cleve, Mark D. Christopherson, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, MN, for respondent.

James M. Strommen, Karen R. Cole, Kennedy & Graven, Chtd., Minneapolis, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge, CRIPPEN and PETERSON, Judges.

## OPINION

WILLIS, Judge

The City of Grant appeals from the district court's order granting summary judgment in favor of American Tower. We affirm.

## FACTS

On August 31, 1999, American Tower, a company that constructs telecommunications towers, submitted an application to

the City of Grant for a conditional-use permit (CUP) to build a tower in Grant. Approximately one month later, the city's planning commission approved the application and forwarded it to the city council. At its October 1999 meeting, the city council tabled consideration of American Tower's application. On November 2, 1999, American Tower informed the city that it considered the application approved because the city had not made a decision within 60 days, as required by Minn.Stat. § 15.99, subd. 2 (1998). On the same day, after being told of American Tower's position, the city council convened to discuss American Tower's application. American Tower's notification notwithstanding, the city moved forward with its review and denied the application in December 1999.

Minn.Stat. § 15.99, subd. 3 (1998), permits municipalities to extend unilaterally the statutory 60–day deadline for municipal action for up to an additional 60 days by notifying applicants of an intention to do so. The city maintains that the application materials sent to American Tower contained such a notice.

After filing a complaint and a petition for a writ of mandamus, American Tower moved for summary judgment. The district court granted the motion, reasoning that (a) the Telecommunications Act did not preempt state law and (b) the city did not abide by the requirements of Minn. Stat. § 15.99. This appeal followed.

## ISSUES

I. Did the district court err in concluding that Minn.Stat. § 15.99, subd. 2 (1998), is not preempted by the Telecommunications Act?

II. Did the city give effective notice to American Tower of a 60–day extension under Minn.Stat. § 15.99, subd. 3 (1998)?

## ANALYSIS

On appeal from summary judgment, a reviewing court considers whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). No genuine issue of material fact exists " '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.' " *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). The party resisting summary judgment must do more than rest on mere averments. *Id.* at 71. Appellate courts view the evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

### I.

The city argues that Minn.Stat. § 15.99, subd. 2 (1998), conflicts with the Telecommunications Act and is therefore preempted. Minn.Stat. § 15.99, subd. 2, provides that a

[municipality] must approve or deny within 60 days a written request relating to zoning * * *. Failure * * * to deny a request within 60 days is approval of the request. If [a municipality] denies the request, it must state in writing the reasons for the denial at the time that it denies the request.

A municipality may extend this 60–day deadline for up to an additional 60 days if it provides written notice of the extension to the applicant, stating the reasons for the extension and its anticipated length. Minn.Stat. § 15.99, subd. 3(f) (1998).

The Telecommunications Act also contains a timeliness requirement:

A state or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities *within a reasonable period of time after the request is duly filed* with such government or instrumentality, taking into account the nature and scope of such request.

47 U.S.C. § 332(c)(7)(B)(ii) (emphasis added). The Telecommunications Act is intended to create a national policy framework to accelerate the deployment of telecommunications technology. *Virginia Metronet, Inc. v. Board of Supervisors*, 984 F.Supp. 966, 970 (E.D.Va.1998). It does so, in part, by placing certain restrictions upon the authority of local bodies to regulate wireless communications facilities. *Id.*

The preemptive effect of a statute is a question of law, subject to de novo review. *In re Speed Limit for Union Pac. R.R.*, 610 N.W.2d 677, 682 (Minn.App. 2000). State laws that interfere with, or are contrary to, the laws of Congress are invalid. *Gibbons v. Ogden*, 9 Wheat. (22 U.S.) 1, 211, 6 L.Ed. 23 (1824). If Congress evinces an intent to occupy a given field, state laws falling within that field are preempted. *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). But the " 'historic police powers of the [s]tates' are not to be eclipsed unless to do so was 'the clear and manifest purpose of Congress.' " *Dahl v. Charles Schwab & Co.*, 545 N.W.2d 918, 922 (Minn.1996) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).

Federal law preempts state law when (1) a statute contains an express preemption clause, (2) preemption can be inferred from the extent of the federal involvement or the scope of the federal interest in a regulated field, or (3) state law conflicts with federal law. *Pikop v. Burlington Northern R.R. Co.*, 390 N.W.2d 743, 748 (Minn.1986). The city argues that the 60–day time limit under Minnesota law conflicts with the "reasonable amount of time" called for by federal law and is thus preempted.

The city argues that 60 days is not a reasonable amount of time to consider an application to construct a telecommunications tower. In support of this proposition, the city cites cases in which courts have found reasonable periods longer than 60 days for municipalities to consider applications for permits to construct telecommunications towers. *See, e.g., Virginia Metronet*, 984 F.Supp. at 977 (stating that 14 months is not per se unreasonable). But the fact that courts have found longer periods reasonable does not mean that 60 days is unreasonable.

The language and legislative history of the Telecommunications Act, as well as reported cases addressing the reasonable-time issue, support the view that section 15.99 does not conflict with the Telecommunications Act and is therefore not preempted. First, the Act preserves the authority of local governments over zoning matters, providing that

> nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

47 U.S.C. § 332(c)(7)(A). Congress has thereby given municipalities latitude in exercising their police powers in zoning decisions regarding telecommunications towers. *See Omnipoint Communications, Inc. v. Foster Township*, 46 F.Supp.2d 396, 401 (M.D.Pa.1999) (stating that although Telecommunications Act places certain restrictions on local authorities, it does not preempt their ability to control zoning decisions regarding telecommunications services). Further, the Act contains a section captioned "State preemption" that specifically prohibits states and local governments from regulating the entry of or the rates charged by mobile services. 47 U.S.C. § 332(c)(3). But that section does not provide that the Act's reasonable-time provision preempts state law regarding the time within which a unit of local government must act on an application to construct a telecommunications tower. *Id.*

The legislative histories of the Telecommunications Act and Minn.Stat. § 15.99 also support the view that the two statutes do not conflict. The conference committee

report on the Telecommunications Act suggests that timeliness issues should be determined at the state level.

> [D]ecisions are to be rendered in a reasonable period of time, taking into account the nature and scope of each request. If a request for placement of a personal wireless service facility involves a zoning variance * * * *the time period for rendering a decision will be the usual period under such circumstances.* It is not the intent of this provision to give preferential treatment to the personal wireless service industry in the processing of requests, or to subject their request to any but *the generally applicable time frames for zoning decisions.*

H.R. Conf. Rep. No. 104–458, at 208 (1996) (emphasis added). Indeed, as one court has noted, "[t]here is nothing to suggest that Congress, by requiring action 'within a reasonable period of time,' intended to force local government procedures onto a rigid timetable ." *Sprint Spectrum, L.P. v. City of Medina,* 924 F.Supp. 1036, 1040 (W.D.Wash.1996); *see also Sprint Spectrum L.P. v. Zoning Hearing Bd.,* 43 F.Supp.2d 534, 537 (E.D.Pa.1999) (interpreting the Telecommunications Act's reasonable-period-of-time requirement to be congruent with a state statute imposing a 60–day time limit); *Flynn v. Burman,* 30 F.Supp.2d 68, 74 (D.Mass.1998) (holding that a local commission had not failed to act on an application within time limit set by state law and, consequently, had not failed to act within a reasonable time under Telecommunications Act). Thus, under the Telecommunications Act, state law determines what is a reasonable period of time to act on applications to build telecommunications towers.

Finally, the Wisconsin Court of Appeals has concluded that the Telecommunication Act's reasonable-time provision, is intended to "stop local authorities from keeping wireless providers tied up in the hearing process." *Westel–Milwaukee Co. v. Walworth County Park & Planning Com'n,* 205 Wis.2d 244, 556 N.W.2d 107, 109

(1996). This is consistent with the intent of section 15.99:

> Minnesota citizens do have the right to receive a response to their requests in a timely manner and at the same time not be entangled in delays or squabbles * * *.

*House Floor Debate on H.F. No. 641* (Apr. 12, 1995) (statement of Rep. Brown).

The Minnesota legislature has determined that 60 days is the "usual period of time" within which a decision should be made on a CUP application, including an application for a CUP to build a telecommunications tower, and has provided that, if necessary, a local-government unit may grant itself an extension of up to an additional 60 days.

Because no genuine issues of material fact exist, we affirm the district court's conclusion that there is no conflict between the Telecommunications Act and Minn. Stat. § 15.99 and therefore no preemption of state law.

## II.

■ The City of Grant next argues that the district court erred in concluding that the city approved American Tower's application by failing to act within 60 days after receiving it. *See* Minn.Stat. § 15.99, subd. 2 (stating municipalities must act on zoning application within 60 days or it is deemed approved). Two provisions of Minn.Stat. § 15.99 allow a municipality to extend its initial 60–day time limit for acting on a CUP application. The first provides for an extension if an application is incomplete but requires the municipality to send notice of the incomplete application within 10 business days of its receipt. Minn.Stat. § 15.99, subd. 3(a) (1998). Here, the city did not notify American Tower within 10 days that its application was incomplete.

The statute also provides that

> [A municipality] may extend the time limit * * * *before the end of the initial 60–day period by providing written no-*

tice of the extension to the applicant. The notification must state the reasons for the extension and its anticipated length, which may not exceed 60 days unless approved by the applicant.

Minn.Stat. § 15.99, subd. 3(f) (emphasis added).

The city claims that the application it mailed to American Tower contained a notice. of extension of the statutory 60–day time limit because the following statement is printed on the reverse side of all application forms that the city sends to prospective applicants for CUPs:

> You are hereby notified that the City of Grant is hereby extending the time deadlines required in M.S. section 15.99 with respect to the written request you have made to the City. The extension is made for an additional sixty (60) days. The reason for the extension is to enable the City Council and the planning commission to more fully deliberate with respect to your request and to allow City staff and consultants time to prepare the necessary findings with respect to the City's ultimate determination. This timeline does not begin until the application is complete with all required submissions.

Therefore, the city argues, it complied with the requirements of the statute by (1) giving written notice of the extension before expiration of the initial 60–day deadline, (2) stating the reasons for the extension, and (3) indicating the anticipated length of the extension.

■■■■ The parties disagree over whether section 15.99 allows the city to give notice of an extension of the 60–day time limit before an application is submitted. In interpreting statutes, courts must ascertain and effectuate the legislature's intent. Minn.Stat. § 45.16 (1998). Where the legislature's intent is clearly discernible from plain and unambiguous language, no construction is necessary or permitted. *Ed Herman & Sons v. Russell*, 535 N.W.2d 803, 806 (Minn.1995). A court should not construe a statute to lead to injustice or an absurd result if the language will reasonably permit another construction. *Id.* (citing Minn.Stat. § 645.17(1)).

American Tower argues that Minn.Stat § 15.99 does not allow the city to grant itself a full 60–day extension to act on a CUP application before it receives an application or, for that matter, before it even sends an application form to a prospective applicant. American Tower reasons that such a practice renders the 60–day requirement of the statute meaningless and that the city thereby grants itself an extension to act on an application without knowing if it is necessary.

■■■■ The city, on the other hand, argues that a literal reading of the statute permits its practice, in that (1) the city gives written notice of the extension before the end of the initial 60–day period, indeed before the 60–day period begins; (2) it gives reasons for the extension, although they are generic reasons that the city claims apply to all applications; and (3) the written notice states the anticipated length of the extension, which is in all cases the maximum of 60 days. But a literal construction is not to be adopted if it is contrary to the general policy and object of a statute. *In re Raynolds' Estate*, 219 Minn. 449, 455, 18 N.W.2d 238, 241 (1945).

We agree with American Tower that the city's practice in general, and specifically in this case, makes the initial 60–day requirement of the statute meaningless. The legislature has stated that

> [t]he object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. *Every law shall be construed, if possible, to give effect to all its provisions.*

Minn.Stat. § 645.16 (emphasis added); *see also Willmus ex rel. Willmus v. Commissioner of Revenue*, 371 N.W.2d 210, 213 (Minn.1985) (stating that "a statute is to be construed as a whole so as to harmonize and give effect to all of its parts." (citation omitted)). The city's practice

would be wholly consistent with a statute that simply gives municipalities 120 days to act on a CUP application. Because routine applications can and should be acted on expeditiously, the legislature intended, in enacting Minn.Stat. § 15.99, to allow an extension of the initial 60–day period only where there are "extenuating circumstances." *Hearing on S.F. No. 647 Before the Senate Comm. on Governmental Operations and Veterans* (Mar. 29, 1995) (statement of Sen. Riveness).

The city cites *Manco of Fairmont, Inc. v. Town Bd.*, 583 N.W.2d 293 (Minn.App. 1998), for the proposition that the requirements of Minn.Stat. § 15.99 are directory, not mandatory. While this court held in that case that the provision requiring the statement of reasons for an extension is directory, it also held that the 60–day limit is mandatory. *Id.* at 295. Further, *Manco* is distinguishable from the present case because the township in *Manco* sent notice of extension *after* it received the completed application. *Id.* at 294–95. Here, the city granted itself an extension even *before* it sent application materials to American Tower.

We conclude that the statutory scheme envisioned and intended by the legislature when it enacted Minn.Stat. § 15.99 requires a city to act in the normal course on a CUP application within 60 days after the application is received. If, upon review of an application, the city determines that there are extenuating circumstances that require an extension of the initial 60–day period to act, it may grant itself an extension, before the end of the initial period, of up to an additional 60 days by giving the applicant written notice that describes the extenuating circumstances and the anticipated length of the extension.

We conclude that the city's reading of Minn.Stat. § 15.99 is inconsistent both with the language and the intent of the statute. We therefore affirm the district court's determination that the city's notice to American Tower of an extension of time for the city to act was ineffective because it was given before American Tower submitted its CUP application.

## DECISION

The district court did not err in granting summary judgment to American Tower because Minn.Stat. § 15.99 is not preempted by the Telecommunications Act and because the city's notice to American Tower that it was granting itself a 60–day extension was ineffective.

**Affirmed.**

CRIPPEN, Judge (dissenting)

Because I would not impose on state and local government agencies a rubric that has not been announced by the legislature, I would reverse the trial court's decision that appellant City of Grant approved respondent American Tower's application to build a tower in the city.

Upon notice given "before the end" of the initial 60–day period following an application, the municipality may give itself up to an additional 60 days to investigate, deliberate upon, and decide the merits of a zoning application. Minn.Stat. § 15.99, subd. 3(f) (1998). The 60–day–extension clause is meaningless by any interpretation given to it.

In all cases, for any reason, the municipality is free to employ the extension clause. Minn.Stat. § 15.99, subd. 3(f) says nothing to limit the reasons useable in a notice for extension, which may be specific to the case or generic to the circumstances of the municipality. Moreover, the need to declare reasons has been counted a direction without a mandate. *Manco of Fairmount, Inc. v. Town Bd. of Rock Dell Township*, 583 N.W.2d 293, 296 (Minn. App.1998), *review denied* (Minn. Oct. 20, 1998).

Because the legislature has employed a meaningless limit on the freedom of agencies to employ a deadline of 120 days rather than 60 days, there are no rules of

construction making it reasonable to suggest that the extension be for circumstances unique to the application as opposed to those that are generic for the zoning process available in the municipality. It is no more reasonable to suggest that the notice be given to individual applications after the time of their application as opposed to a notice effectively given to all prospective applicants.

It is a judicial responsibility to effectuate the legislature's intent. Minn.Stat. § 645.16 (1998). But the courts cannot manufacture content for statutes without language or history of the enactment that makes that intent evident. *See id.* (requiring regard for the unambiguous language of an enactment, without pretextual pursuit of its spirit). No doubt the legislature intended that the 60–day extension should be only for "extenuating circumstances." But it left to municipalities the task of determining which circumstances are extenuating, without limitation.

When respondent's application was received, appellant found it necessary to employ a 120–day approval period in all cases then arising. The legislature has permitted this municipal determination. If the law is to be otherwise, it is for the legislature, not the courts, to alter the mandate. *See Martinco v. Hastings,* 265 Minn. 490, 497, 122 N.W.2d 631 (1963) (stating "[i]f there is to be a change in the statute, it must come from the legislature, for the courts cannot supply that which the legislature purposefully omits or inadvertently overlooks").

Because I see nothing in this statute or its history that gives us the freedom to enlarge the importance of the initial 60–day approval period or to diminish the freedom of municipalities to extend the period for 60 additional days, I respectfully dissent from the differing construction of the statute in the majority opinion. I concur with the majority in its conclusion that state law is not preempted by the Telecommunications Act.