MILLER INDUSTRIES, INCORPORATED v CADILLAC STATE
BANK

1. GUARANTY—CONTRACTS—CONSTRUCTION—INTENT.

The intentions of the parties governs in construing a contract of
guaranty; in determining what those intentions are, the court
must consider not only the language of the contract, but also
the situation and the circumstances of the parties at the time
the contract was made.

2. SECURED TRANSACTIONS—CHATTEL MORTGAGES—ACCOUNTS RECEIVA-
BLE—PARTIES' INTENT.

Trial court's finding that a chattel mortgage was not secured by
future accounts receivable was not error even though a promis-
sory note between the parties did contain a clause which
referred to both accounts receivable and bank accounts where
there was no listing of the accounts receivable on attached
schedules, as there were for other enumerated assets and the
court, in determining the parties' intent, found that financing
by assignment of receivables being so common, some reasona-
bly definite and express designation or reference to the fact
should have been found in the encumbrance if the parties
intended a security interest in the receivables.

3. GUARANTY—DISCHARGE OF GUARANTOR—IMPROPER DISSIPATION—
PRO TANTO DISCHARGE.

A guarantor, even though he has guaranteed payment, is dis-
charged to the extent of a loss occasioned by the creditor doing
some affirmative act which results in the improper dissipation
or the misapplication of funds which might have been used for
the purpose of discharging the principal obligation.

4. GUARANTY—SUBSTITUTION OF DEBTORS—DISCHARGE OF GUARANTOR.

Plaintiff guarantor was not released from its obligation simply

REFERENCES FOR POINTS IN HEADNOTES
[1] 38 Am Jur 2d, Guaranty § 70.
[2] 15 Am Jur 2d, Chattel Mortgages § 21.
[3] 38 Am Jur 2d, Guaranty § 84.
[4] 38 Am Jur 2d, Guaranty § 91.

because a new chattel mortgage was executed between the creditor and the debtor in which the debtor's new wife was substituted as a debtor for the debtor's first wife, the debtor having been divorced, where the loan was made at plaintiff's insistence, so that he could sell part of his business to the debtor and keep a large competing customer satisfied, plaintiff's interest was in the debtor, not his wife, the plaintiff did not show that he was injured by the substitution of wives, and plaintiff who profited from the selling of the business, did not argue that he was not a paid surety.

Appeal from Wexford, Philip C. Elliott, J. Submitted Division 3 October 5, 1971, at Marquette. (Docket No. 10299.) Decided April 24, 1972. Leave to appeal denied, 387 Mich 812.

Complaint by Miller Industries, Incorporated, against Cadillac State Bank to recover funds set off by defendant on a foreclosure of a guaranty contract. Judgment for defendant. Plaintiff appeals. Remanded with instructions.

*Landman, Hathaway, Latimer, Clink & Robb* (by *William T. Kerr),* for plaintiff.

*Korn & Burns,* for defendant.

Before: FITZGERALD, P. J., and BRONSON and T. M. BURNS, JJ.

T. M. BURNS, J. Prior to March 1, 1958, plaintiff owned and operated a glass division within its corporate structure. Because this division directly competed with the business of one of plaintiff's major customers, plaintiff, at the customer's request, decided to sell its glass division.

Plaintiff's president, Mr. Miller, asked Mr. Kushmaul, the manager of the division, if he would be interested in purchasing the business. Kushmaul expressed an interest in the purchase, but had no capital. Mr. Miller then told Kushmaul that

financing could be obtained through the defendant bank.

On March 1, 1958, defendant loaned Kushmaul $190,000. Of this sum, $14,000 was secured by a real estate mortgage and is not involved in this dispute. Kushmaul and his first wife Donna executed a promissory note in the amount of $176,000 payable to the defendant. The note was secured by a chattel mortgage on the assets of Miller Glass Company. As additional security for the loan, and in consideration of the opportunity to dispose of its glass division, plaintiff pledged $190,000 in certificates of deposit which the bank was empowered to apply to the remaining balance due on the loan in case of default.

In May, 1960, plaintiff, because Kushmaul had been making payments regularly on the obligation, wanted the bank to release its certificates of deposit. Defendant agreed, but required plaintiff to execute the following document entitled "Promissory Note".

"If this Note of March 1, 1958, or the interest, is not paid when due, then the amount remaining unpaid herein shall, without notice, become immediately due and payable at the option of the holder."

On April 18, 1961, defendant renewed the note with Mr. Kushmaul. Kushmaul had remarried, however, and on the note his second wife signed as joint obligor.

In 1966 Kushmaul fell behind in the payments. Plaintiff then attempted to find another party to run the business. The bank then agreed to forego foreclosure, and plaintiff arranged for Mr. Elzinga and Mr. Volkers to purchase the business. The

business continued to decline, however, and the new owner, Elzinga, was unable to meet the payments as they came due.

Defendant then demanded payment from plaintiff. When plaintiff refused to pay, defendant proceeded to foreclose and set off $103,077.96 in plaintiff's checking account to pay the promissory note. Plaintiff then brought suit to recover the funds. The trial court found in defendant's favor with plaintiff entitled to a return of $36,000. From that judgment plaintiff brings this appeal.

Plaintiff first contends that the chattel mortgage of April 18, 1961, between defendant and Kushmaul gave to defendant a security interest in the future accounts receivable of the glass company and that defendant was, therefore, obligated to reduce plaintiff's debt by the amount of those receivables.

The instrument in question did contain a clause which refers to both accounts receivable and bank accounts. The trial court found, however, that when the glass business was sold by plaintiff that it did not sell the outstanding accounts receivable and that there was no intent to encumber future receivables.

There was no listing of any of the accounts receivable on the attached schedules as there was for other enumerated assets.

In construing a contract of guaranty, the intention of the parties governs. *First National Bank of Ypsilanti v Redford Chevrolet Co,* 270 Mich 116 (1935). In determining what those intentions are, the court must consider not only the language of the contract, but also the situation and the circumstances of the parties at the time the contract was made. *Mathews v Phelps,* 61 Mich 327 (1886).

In the instant case the trial court held:

"Financing by assignment of receivables is sufficiently common that, if it is to be subjected to a prior lien or a purchase money mortgage, some reasonably definite and express designation or reference to that fact should be found in the encumbrance. We do not consider the printed language of the 1961 form to be reasonable description of future accounts receivable. The parties never intended to encumber future accounts receivable."

The trial court, after listening to the testimony and reviewing all of the evidence, refused to apply the boiler-plate language contained in the printed form contract. This Court does not substitute its judgment for that of the trial court when there is proof and proper inferences from proofs to sustain the court's findings. *Gervais v Annapolis Homes, Inc,* 29 Mich App 378 (1971).

In the instant case the trial court found as a matter of fact that the parties never intended to encumber future accounts receivable. Our review of the record reveals ample evidence to support that finding. We will not, therefore, reverse since the trial court's finding is not clearly erroneous. GCR 1963, 517.1; *Lieberman v Solomon,* 24 Mich App 495 (1970).

Plaintiff next contends that the amount of defendant's recovery should be reduced by $7,000, the value of certain trucks and cars which defendant repossessed in connection with a loan made to Elzinga after he had taken over the business. It is plaintiff's position that after-acquired personal property is covered by the chattel mortgage of April 18, 1961, and therefore the amount recovered from the vehicles should be used to reduce plaintiff's obligation rather than Elzinga's.

We agree. A schedule attached to the chattel mortgage lists the items to be covered. It then goes

on to include after-acquired property in the following manner:

"Together with the above listed office fixtures and furniture, machinery and equipment including any automotive equipment on the date hereof and located in, on or about the premises of the Mortgagor or used in connection therewith and all or any goods, chattels and inventory which Mortgagor may hereafter own, acquire or possess, and which may hereafter be located in, on or about the described premises."

From the above language, it is apparent to us that the vehicles in question were covered by the chattel mortgage executed between Kushmaul and defendant. Therefore, defendant should have deducted the amount recovered on the trucks from the amount owed to them by Kushmaul and plaintiff, as guarantor, should be given credit for the amount recovered by the bank for the trucks.

"And where the creditor does some affirmative act which results in the improper dissipation or the misapplication of funds which might have been used for the purpose of discharging the principal obligation, the guarantor, even though he has guaranteed payment, is discharged to the extent of the loss so occasioned." 38 Am Jur 2d, Guaranty, § 84, p 1092.

Therefore, plaintiff should be discharged to the extent of $7,000 since the proceeds from the trucks should have been used to reduce Kushmaul's debt.

Plaintiff next contends that Kushmaul's divorce and remarriage with the release of Kushmaul's first wife and the substitution of his second wife on the chattel mortgage dated April 18, 1961, discharged plaintiff as guarantor by operation of law.

We are aware of the cases which have held that a substitution of obligors serves to release a surety. See *Co-operative Creamery Co v Huhn,* 241

Mich 23 (1927); *Reichert v Savings Bank of Royal Oak,* 261 Mich 227 (1933). However, we have more here than just a paid surety called upon to answer for the debt of another. It was at plaintiff's instigation that the loan was made to Kushmaul in the first place. Plaintiff had to get rid of the glass company to satisfy a large, competing customer. Plaintiff thereupon chose Kushmaul as the purchaser and arranged for the financing. As a result of these negotiations, plaintiff received $190,000 as a purchase price and in addition was able to keep its large customer happy because the two companies no longer competed with one another.

Now plaintiff would have this Court relieve it of the responsibility of making good on the loan simply because Mr. Kushmaul divorced his first wife and remarried, whereupon the bank substituted the second Mrs. Kushmaul on a new chattel mortgage executed between the parties. Plaintiff asks for this relief despite the fact that all of the arrangements were made solely for the benefit of plaintiff.

The contract for the sale of the business was between plaintiff and Kushmaul. Although Kushmaul's first wife did join her husband in the note and chattel mortgage, plaintiff was primarily interested in Kushmaul and his ability to run the business.

The reason for the release of a surety when obligors are changed or substituted is as follows:

"Their release, * * * is on the theory that the change in the obligation by the substitution of new names has the effect of making a different contract on which they never intended to become liable." *Co-operative Creamery Co v Huhn,* 241 Mich 23, 27 (1927).

In the instant case plaintiff needed someone to

purchase its glass division. It therefore sought out Kushmaul and persuaded him to purchase the division by arranging to obtain a $190,000 loan for him from defendant bank. Plaintiff in turn received a handsome price for its glass division. Plaintiff would now, however, have this Court rule that because Kushmaul substituted one wife for another as obligor on the contract that it should be relieved of any responsibility thereon despite the fact it had instigated the entire arrangement for its own benefit.

Plaintiff made no showing below as to how it was injured by the substitution of wives on the chattel mortgage. In ruling on this issue, the trial court stated:

"The court inquired of how much property Donna took in the divorce, an inquiry that the parties preferred to avoid although she obtained the home and the car, there was no showing at the trial that they would have been available at the time of the foreclosure nor that they were not replaced by more valuable assets jointly owned in the second marriage."

Plaintiff does not argue that it is not a paid surety. A paid surety must demonstrate that it has been prejudiced before it will be released from its contract of guarantee. *Bernadich v Bernadich,* 287 Mich 137, 144 (1938). Plaintiff not only failed to prove the worth of the property Kushmaul's first wife took with her as a result of the divorce, but made no showing that the substitution of defendant's second wife as obligor resulted in less property being available to satisfy the debt. We hold that plaintiff is not entitled to a release from the contract as a result of the substitution of parties nor is it entitled to a reduction in the amount of its obligation equal to the amount of property Kushmaul's first wife took with her in the divorce.

Plaintiff never established the value of such property nor requested the trial court to grant such a reduction. We do not consider issues raised for the first time on appeal.

The cause is remanded to the trial court for an order reducing judgment in defendant's favor in the amount of $7,000.

No costs.

All concurred.