ED HERMAN & SONS,
et al., Respondents,

v.

James H. RUSSELL and First Bank National Association, Trustees under Trust Agreement Dated December 30, 1986, Petitioners, Appellants.

No. C7–93–609.

Supreme Court of Minnesota.

June 9, 1995.

Rehearing Denied Aug. 16, 1995.

Lee W. Mosher, Davern, McLeod & Pezalla, Golden Valley, for appellant.

Jo Lynn Isaccson, David W. Skogerboe, Skogerboe & Skogerboe, Ctd., Blaine, for respondent.

## OPINION

TOMLJANOVICH, Justice.

Under Minn.Stat. § 582.31(a) (1994), a mortgagee of agricultural property may either obtain and execute a judgment for the debt owed on the note secured by the mortgage, or foreclose on the mortgage and obtain a deficiency judgment, if allowed. On March 23, 1990, Ed Herman & Sons, a Minnesota partnership, and Edward Herman, Gerald Herman and Duane Herman, three of its four partners, brought an action against James Russell and First Bank National Association, appellants, to have a $50,-000 mortgage against agricultural property owned by the partnership declared void on the grounds Minn.Stat. § 582.31 precluded

the appellants from foreclosure, because appellants already had obtained a judgment for the debt the mortgage secured, or, alternatively, for an accounting of the amount due. Appellants, trustees of a trust held for the shareholders of the original mortgagee, counterclaimed for foreclosure of the mortgage, arguing Minn.Stat. § 582.31 did not apply. In an unpublished decision, the court of appeals reversed the summary judgment entered in the trial court and held Minn.Stat. § 582.31 precluded appellants from foreclosing on the partnership property. The court of appeals also affirmed the trial court's judgment allowing the respondents to deposit $80,000 with the trial court for release of a portion of the mortgaged farmland. We reverse in part and affirm in part.

Edward Herman and his sons Duane, Gerald, and Ronald owned and farmed land in Anoka County. The farmland was owned through a general partnership, Ed Herman & Sons, and the farming enterprise was conducted through an equally owned corporation, Herman Farms, Inc. Howe Chemical Corporation and Howe, Inc. supplied fertilizers and farming chemicals to the Herman corporation. In 1982, the Howe companies and the Herman corporation signed a credit agreement. By August 1985, the Herman corporation owed the Howe companies approximately $100,000. Before extending more credit to the Herman corporation, the Howe companies sought additional security. To provide this security, Ronald Herman, in his capacity as a partner of the Herman partnership, executed a $50,000 mortgage on the Herman partnership farmland with the Howe companies. Although no formal documentation existed, both parties agreed and the trial court found that the mortgage created a guaranty. However, the parties differ over the interpretation of the nature of the guaranty.

The mortgage agreement provided that "if the said mortgagor [Herman partnership] * * * shall pay to the said mortgagees [the Howe companies] * * * the sum of $50,000 * * * [d]ue to said mortgages on open account * * * for purchases of fertilizer and agricultural chemicals from mortgagees," the mortgage would then be satisfied and cancelled. The mortgage agreement did not reference a specific "note," or make clear whether the accounts secured by the mortgage were accounts of the Herman partnership or the Herman corporation.

Relying on parol evidence, the trial court determined the 1982 credit agreement between the Howe companies and the Herman corporation constituted a note "because it [was] a promise by the Herman corporation to pay money to [the] Howe [companies]." Moreover, the trial court found the open account referenced in the mortgage agreement to be the account the Herman corporation owed the Howe companies. Finally, the trial court determined the Herman partnership only guaranteed a maximum of $50,000 of the Herman corporation's total debt.

In 1986, Ronald Herman formed his own corporation, Majestic Farms, Inc., and the Herman corporation ceased operations. Majestic Farms assumed the debts of the Herman corporation. In the meantime, the Howe companies were sold and their interests were placed in trust for their shareholders.

In 1989, appellants sued the Herman corporation, Ronald Herman, and Majestic Farms on the open accounts that were owed to the Howe companies for the purchase of fertilizer and chemicals. Appellants obtained a default judgment of $143,225.05. Thereafter, Ronald Herman declared bankruptcy and the Herman partnership began dissolution proceedings. The Herman partnership, and three of the four individual partners, Edward Herman, Gerald Herman, and Duane Herman, brought this action to have the mortgage against the Herman partnership's farmland declared void or, alternatively, for an accounting of the amount due. Appellants counterclaimed for foreclosure of the mortgage.

After litigation had commenced, the trial court allowed the Herman partnership to deposit $80,000 with the trial court for a release of a portion of the mortgaged farmland. The remaining farmland, which was still subject to the mortgage, had an appraised value of approximately $600,000. Upon conclusion of the trial, the trial court determined the $50,000 mortgage was valid, but had been reduced by payments from the Herman corporation and from Majestic

Farms to $10,744.57. In addition, the trial court awarded $10,000 in attorney fees to the appellants.

The court of appeals reversed the trial court's judgment and held Minn.Stat. § 582.31 precluded the Howe companies from foreclosing on the Herman partnership's farmland. The court of appeals also determined the Howe companies were not entitled to attorney fees. Finally, the court of appeals affirmed the trial court's judgment allowing the Herman partnership to deposit $80,000 with the trial court for release of a portion of the mortgaged farmland.

The central issue in this case is the application of Minn.Stat. § 582.31 which provides:

(a) For a mortgage on property used in agricultural production entered into on or before March 22, 1986, the mortgagee may only proceed to:

(1) obtain a personal judgment for the debt owed on the note secured by the mortgage and execute on the judgment; or

(2) foreclose on the mortgage and obtain a deficiency judgment, if allowed.

(b) An action under paragraph (a), either clause (1) or (2), bars an action under the other clause.

■ The interpretation of a statute is a question of law subject to de novo review on appeal. *Meister v. Western Nat'l Mut. Ins. Co.,* 479 N.W.2d 372, 376 (Minn.1992). The primary object in statutory interpretation is to ascertain and effectuate the intention of the legislature. Minn.Stat. § 645.16 (1994). Where the intention of the legislature is clearly manifested by plain and unambiguous language, no construction is necessary or permitted. *Lenz v. Coon Creek Watershed Dist.,* 278 Minn. 1, 9, 153 N.W.2d 209, 216 (1967). If a statute is unclear or ambiguous, a court may refer to the legislative history surrounding the statute's enactment to ascertain its legislative intent. Minn.Stat. § 645.16(7) (1994).

Appellants' principal argument is the statute does not protect the Herman partnership because: 1) the Herman partnership is a guarantor; 2) guarantors are not protected

by anti-deficiency statutes; and 3) Minn.Stat. § 582.31 is an anti-deficiency statute. Appellants' first two premises are accurate. Both parties agree and the trial court found the Herman partnership guaranteed the Herman corporation's debt with a mortgage. In addition, Minnesota courts have found that guarantors are not protected by anti-deficiency statutes. *National City Bank v. Lundgren,* 435 N.W.2d 588 (Minn.App.), *pet. for rev. denied,* (Minn. March 29, 1989) (citing *Victory Highway Village, Inc. v. Weaver,* 480 F.Supp. 71 (D.Minn.1979), *aff'd,* 634 F.2d 1099 (8th Cir.1980)); *Miller & Schroeder, Inc. v. Gearman,* 413 N.W.2d 194 (Minn. App.), *pet. for rev. denied,* (Minn., Dec. 13, 1987).

■ A fundamental flaw in appellants' argument is the premise that Minn.Stat. § 582.31 is an anti-deficiency statute; it is not. An anti-deficiency statute prevents a creditor from seeking a deficiency after foreclosure has occurred. *See, e.g., Miller & Schroeder, Inc.,* 413 N.W.2d at 196 (interpreting Minn.Stat. § 580.23, subd. 2 (1984)). Minn.Stat. § 582.31 is an election of remedies statute and does not prevent a creditor from seeking a deficiency judgment after foreclosure has occurred. In fact, it permits a deficiency judgment if one is allowed under other statutes.[1] Although appellants' argument is flawed, their conclusion that the Herman partnership is not protected is not necessarily erroneous.

■ Here, it is unclear whether the statute limits the mortgagee to only the remedies set out in the statute. Where a mortgagee, like the Howe companies, has already sought recovery on the note, it is unclear whether they may also pursue judgment against a mortgagor-guarantor, like the Herman partnership. Since the statute is unclear as to its breadth of protection, it is appropriate to look to legislative history to ascertain the protective intent of the legislature.

A review of the statute's legislative history indicates the statute was designed to prevent

---

1. A mortgagee may pursue a deficiency judgment pursuant to the statutory scheme set out in Minn. Stat. § 582.30 (1994).

a creditor from seeking both a judgment on the debt and a foreclosure against the same entity or person. Senator Berg described the purpose in the following manner:

This says that section seven just simply says when you start the process you've got to go one way or the other you can't do both and keep it tied up in court. It comes from [sic] several other states have this provision, I think California is one of them. *You can't go after the debtor from both ends. Foreclose or go get a judgment one or the other.*

Hearings on S.F. 1594, S.Agr.Comm., 74th Minn.Leg., Feb. 7, 1986 (audio tape) (comments of Senator Berg) (emphasis added). Senator Merriam similarly explained the provision at a subsequent hearing:

Now, what some other states have done and I think it is appropriate, is to go to a single action rule that says that the creditor has got two remedies he's got to enforce one or the other, but not both. Either they can foreclose on the mortgage and get a deficiency judgment under the rules we've outlined, or they can foreclose on the note or get a personal judgment on the note. And when you make that option, the other is barred. * * * *one of the problems is that the debtor is getting it from two directions simultaneously because it's not unusual to commence both actions.*

Hearings on S.F. 1590, S.Judiciary Comm., 74th Minn.Leg., Feb. 14, 1986 (audio tape) (comments of Senator Merriam) (emphasis added).

The senators referred to the debtor facing both actions. The implicit assumption in their statements is the debtor is also the mortgagor. If the debtor was not the mortgagor, both actions could not be commenced against the debtor. Thus, the clear purpose of this statute is to prevent the mortgagee from pursuing both actions against the same entity. In this case that cannot occur because the mortgagor and the debtor are different entities. Although both options existed, both options did not exist against one entity because the debtor was a stranger to the mortgage.

■ We conclude Minn.Stat. § 582.31 is limited to prevent the harm it was enacted to remedy. Minn.Stat. § 582.31 was intended to prevent a mortgagee of agricultural land from pursuing against one party both a mortgage foreclosure and a suit on the note secured by the mortgage. Only a party against whom a mortgagee could have commenced both actions is protected under the statute. Since the debtor, the Herman corporation, is a stranger to the mortgage, both foreclosure and suit on the note secured by the mortgage could not have been commenced against the Herman partnership. Therefore, we hold that the statute does not protect the Herman partnership, and the Howe companies may institute foreclosure proceedings.

■ The Howe companies also claim the trial court erred (1) by applying the payments of Majestic Farms to reduce the debt owed by the Herman corporation, and (2) by reducing the mortgage on a first-dollar-paid basis. We disagree.

First, the trial court concluded Majestic Farms' payments should be applied to reduce the Herman corporation's debt because Majestic Farms had assumed the Herman corporation's indebtedness and the Howe companies practice was to apply payments to older debts before newer debts. We believe those reasons support the trial court's conclusion. Therefore, the court's determination that Majestic Farms' payments should be applied to reduce the Herman corporation's mortgage debt is not erroneous.

■ Second, a guaranty generally covers the last dollar owed by a debtor to a creditor, absent an agreement or practice to the contrary. *See* 38 C.J.S. *Guaranty* § 78 (1943); *Miller Indus. Inc. v. Cadillac State Bank,* 40 Mich.App. 52, 198 N.W.2d 433, 435 (1972) (holding "[i]n construing a contract of a guaranty, the intention of the parties governs"). Here, no formal documentation existed describing the guaranty agreement. "[W]here a written agreement is ambiguous or incomplete, [parol] evidence * * * tending to establish the intent of the parties is admissible." *Material Movers, Inc. v. Hill,* 316 N.W.2d 13, 17 (Minn.1982). At trial, there was testimony that Ron Herman did not want to secure more than $50,000 of the Herman corporation's debt. The trial court

used that parol evidence to conclude that contrary to the general rules governing guaranties, the parties intended to apply the payments to immediately reduce the mortgage debt.

The trial court's interpretation of the nature of the guaranty is a fair and plausible interpretation of the parties' intent. We defer to the trial court's determination and hold the trial court did not commit error by concluding that, contrary to the general rules governing guaranties, the parties intended to apply the payment to immediately reduce the mortgage debt. Therefore, we reinstate the trial court's judgment that the $50,000 mortgage has been reduced by payments from the Herman corporation and Majestic Farms to $10,744.57.

■ Finally, appellants contend the trial court's reliance on Minn.R.Civ.P. 67.01 was erroneous. The trial court allowed the Herman partnership to deposit $80,000 with the court in exchange for the release of a portion of the land from the mortgage. The trial court based this action principally on Minn.R.Civ.P. 67.01 which provides:

> In an action in which any part of the relief sought is a judgment for a sum of money or the disposition of any other thing capable of delivery, a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such money or thing.

In addition, the trial court stated:

> Finally, there are some very practical "extra-judicial" considerations that commend the proposed use of the Rule 67.01 procedure in this case. Those considerations may not be the kind that are usually taken into account by a court, but here those practical considerations are certainly significant and difficult to ignore. They are, simply, that the Rule 67.01 procedure in this case should go a long way toward getting *everybody* paid—First Nat'l Bank Anoka, the Farm Credit Bank, the receiver (a most important consideration for the Court which appointed him in the first place), and even the Howe Interests itself, to the extent that future litigation shows its entitlement to payment. The Rule 67.01 procedure may also help put the

partnership back on its financial feet and to pay off other additional creditors.

We agree with appellants.

In their complaint, respondents requested the court either declare the mortgage void or, alternatively, determine the amount due under the mortgage pursuant to an accounting. We hold that for the purposes of Minn.R.Civ.P. 67.01, the Herman partnership did not seek either a judgment for a sum of money or the disposition of any other thing capable of delivery. Therefore, the trial court erred by employing Minn.R.Civ.P. 67.01 to allow the Herman partnership to deposit $80,000 with the court to release a portion of the land in question for sale.

■ Nevertheless, we conclude that based on the "extra-judicial" reasons the trial court cited for employing the procedure set out in Rule 67.01, it was within the discretion of the trial court to allow the Herman partnership to deposit $80,000 for the release of the land when the remaining land encumbered by the mortgage had a fair market value approximately twelve times the amount of the mortgage.

In sum, we reinstate the trial court's judgment and hold Minn.Stat. § 582.31 does not apply because the Herman corporation is a stranger to the mortgage. In addition, we hold the mortgage on the Herman partnership farmland has been reduced to $10,744.57. Further, we conclude that it was within the trial court's discretionary power to allow the Herman partnership to deposit $80,000 in exchange for the release of a portion of the land in question. Finally, we reinstate the trial court's award of $10,000 to the appellants for attorney fees finding the award does not constitute an abuse of discretion.

Reversed in part and affirmed in part. The judgment entered in the trial court is hereby reinstated.