Susan GAERTNER, Ramsey County At-
torney on behalf of the MINNESOTA
STATE PATROL, Respondent,

v.

ONE 1999 DODGE PICKUP TRUCK,
MN LIC. NO. GKR–391,
Appellant.

No. C2–03–66.

Court of Appeals of Minnesota.

Aug. 26, 2003.

Susan Gaertner, Ramsey County Attorney, Thomas E. Ring, Assistant County Attorney, St. Paul, MN, for respondent.

Rodd A. Tschida, St. Paul, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge, WILLIS, Judge, and FORSBERG, Judge.*

## OPINION

HUDSON, Judge.

The subject of this forfeiture proceeding is one 1999 Dodge pickup truck, Minnesota license number GRK–391 (the truck). Martin John Stoltzman owns the truck, and he appeals from a stipulation following the district court's July 10, 2002, order refusing to dismiss the forfeiture proceedings.[1] The state patrol seized the truck in March 2002 upon arresting Stoltzman for fleeing a police officer; the state then instigated forfeiture proceedings. On March 28, 2002, the district court ordered that the truck be retained by the state patrol until the court made a final determination regarding the forfeiture of the truck. Shortly thereafter, Stoltzman attempted to redeem possession of the truck under the surrender provision in Minn.Stat. § 609.531, subd. 5a(b) (2000), by surrendering the certificate of title to the state patrol. Relying on the district court's March 28, 2002, order, the state patrol did not surrender the vehicle. The district court ruled on a subsequent motion for dismissal that Minn.Stat. § 609.5312, subd. 4 (2000), relating to forfeiture proceedings for fleeing a police officer in a motor vehicle, precluded relief under the surrender provision in Minn.Stat. § 609.531, subd.

5a(b). Because we conclude that the specific forfeiture provision relating to fleeing a police officer controls and that both provisions can be effectuated, we affirm.

## FACTS

Near midnight on March 24, 2002, a state trooper detected a truck traveling at 71 miles per hour in a 55–mile–per–hour zone on I–35E in St. Paul. The trooper finally stopped the truck near Larpenteur Avenue, got out of the squad car and approached the truck. As he neared the back end of the truck, it accelerated at a high rate of speed. The trooper followed the truck as it turned off the next exit, Maryland Avenue, and observed the truck almost lose control on the ramp. From Maryland Avenue, the truck proceeded at a high rate of speed and made several turns. As it was completing the final turn, the driver and registered owner of the truck, Martin John Stoltzman, lost control of the truck and it veered into a snowbank, striking a utility pole. Stoltzman continued to flee on foot and was apprehended after he tripped and fell. Even then, he continued to struggle with the officers. Stoltzman smelled strongly of alcohol and admitted to fleeing police on previous occasions. The state patrol arrested Stoltzman and seized the truck.

The state charged Stoltzman with felony fleeing a police officer in a motor vehicle, in violation of Minn.Stat. § 609.487, subd. 3 (2000), and simultaneously filed a motion to forfeit Stoltzman's truck under Minn. Stat. § 609.5312, subd. 4 (2000), which governs forfeitures for fleeing police officers. Stoltzman failed to appear at the first

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Because the July 10, 2002, order was not a final appealable order, the parties arrived at a stipulation for the purposes of perfecting an appeal. *See* Minn. R. Civ.App. P. 103.03, subd. (a) (providing that an appeal is taken from the entry of a final or partial judgment).

scheduled hearing. The district court filed a preliminary order, ruling that the state patrol should retain possession of the truck until final disposition of the proceedings. On April 1, 2002, Stoltzman, relying on the surrender provision in Minn.Stat. § 609.531, subd. 5a(b) (2000), attempted to redeem possession of the truck by tendering the certificate of title to the truck along with a letter from his attorney. But the state patrol did not surrender the truck, and Stoltzman contends that the state patrol continues to retain possession of the title as well.

Stoltzman pleaded guilty to the charged offense on April 25, 2002, and the court sentenced him on June 6, 2002. But on May 15, 2002, Stoltzman filed a motion to dismiss the forfeiture proceedings, requesting attorney fees. The district court denied Stoltzman's motion on July 10, 2002, concluding that Minn.Stat. § 609.5312, subd. 4, specifically governs forfeitures for fleeing a police officer; while Minn.Stat. § 609.531 (2000), in contrast, addresses seizures and forfeitures generally. Therefore, the state patrol was under no obligation to surrender Stoltzman's truck. Moreover, the district court found that the legislature differentiated between the two methods available to redeem possession of personal property pending forfeiture under Minn.Stat. § 609.531, subd. 5a: (1) subdivision 5a(a) applies to all pending forfeitures, and (2) subdivision 5a(b) only applies to vehicles seized under that section [Minn.Stat. § 609.531]. The district court concluded that because the pending forfeiture was brought under § 609.5312, subd. 4, the surrender option in § 609.531, subd. 5a(b), is inapplicable. Based on this holding, the district court did not reach the issue of attorney fees.

The district court, however, did not enter a final judgment; therefore, Stoltzman could not appeal from that order. Accordingly, the parties entered into a stipulation on October 24, 2002, approved by the district court on October 31, 2002, providing that, if either party perfects an appeal, the state patrol shall postpone forfeiture of Stoltzman's truck pending appellate resolution. This appeal follows.

## ISSUE

Is a vehicle forfeiture for fleeing a police officer in a motor vehicle exclusively governed by the forfeiture proceedings set forth in Minn.Stat. § 609.5312, subd. 4 (2000)?

## ANALYSIS

In this appeal, we must determine the correct construction of, and reconciliation between, Minn.Stat. § 609.531, subd. 5a(b) (2000), and Minn.Stat. § 609.5312, subd. 4 (2000), of the Minnesota statutory forfeiture scheme. Because section 609.5312, subdivision 4, requires proof of a conviction before a vehicle is subject to forfeiture, the specific question here involves the proper disposition of the seized vehicle pending the commencement of the forfeiture action upon conclusion of the criminal case.

Minn.Stat. § 609.531, subd. 5a(b), provides:

> If the owner of a motor vehicle that has been seized *under this section* seeks possession of the vehicle before the forfeiture action is determined, *the owner may surrender the vehicle's certificate of title in exchange for the vehicle.* The motor vehicle must be returned to the owner within 24 hours if the owner surrenders the motor vehicle's certificate of title to the appropriate agency, pending resolution of the forfeiture action.

(Emphasis added.) Minn.Stat. § 609.5312, subd. 4(a), provides:

A motor vehicle is subject to forfeiture under this subdivision if it was used to commit a violation of section 609.487 [fleeing a police officer] and endanger life or property. A motor vehicle is subject to forfeiture under this subdivision only if the offense is established by proof of a criminal conviction for the offense. *Except as otherwise provided in this subdivision,* a forfeiture under this subdivision is governed by sections 609.531 [general forfeiture rules], 609.5312 [specific "nondrug" crimes], 609.5313 [forfeiture by "judicial action"], and 609.5315, subdivision 6 [disposition of forfeited property].

(Emphasis added.) The statute further provides that where a vehicle is seized subject to forfeiture for fleeing police, it shall be returned after a hearing if the district court finds that (a) the prosecutor has not charged the predicate fleeing felony; (b) the owner has demonstrated a defense to forfeiture; or (c) the owner has demonstrated that seizure would create an undue hardship. *Id.,* subd. 4(b).

Stoltzman argues that the state patrol "violated (and continues to violate) the unambiguous language of Minn.Stat. § 609.531, subd. 5a(b)," by failing to release the truck to him in exchange for surrender of the certificate of title. Stoltzman contends that his failure to appear at the hearing, within 96 hours of seizure, pursuant to Minn.Stat. § 609.5312, subd. 4(b), does not affect his ability to recover his truck under the surrender provision in Minn.Stat. § 609.531, subd. 5a(b). Stoltzman's argument is based on the assumption that Minn. Stat § 609.5312, subd. 4, does not exclusively control the return of a seized vehicle pending forfeiture for fleeing a police officer—an argument he claims is buttressed by the fact that section 609.5312, subdivision 4, provides that vehicle forfeiture for fleeing a police officer is also governed by section 609.531 (2000).

Thus, Stoltzman contends that section 609.531 and section 609.5312, subdivision 4, merely represent alternative grounds for the return of a seized vehicle pending forfeiture for fleeing a police officer. We disagree.

Statutory construction is a question of law reviewed de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998). A district court's application of the law to undisputed facts is a "conclusion of law fully reviewable" by this court. *Lee v. Hunt,* 642 N.W.2d 57, 59 (Minn.App.2002) (citation omitted). When determining whether two statutes may be reconciled, we are guided by the canons of statutory interpretation, which provide that effect should be given to both statutes wherever possible. *Id.* at 60. Of course, laws should be construed to effectuate all provisions wherever possible. Minn.Stat. § 645.16 (2000) (explaining legislative intent controls). "In ascertaining the intention of the legislature" we are mindful of the presumptions that the legislature does not intend "absurd, impossible of execution, or unreasonable" results and that the legislature "intends the entire statute to be effective and certain." Minn. Stat. § 645.17(1), (2) (2000) (discussing presumptions in ascertaining legislative intent). When statutory language is clear and free from ambiguity, we will not disregard "the letter of the law ... under the pretext of pursuing the spirit." Minn.Stat. § 645.16. We apply the plain and ordinary meaning when construing the scope and meaning of a statute. *Chapman v. Comm'r of Revenue,* 651 N.W.2d 825, 831 (Minn.2002). Where the legislature's intention is "clearly manifested by plain and unambiguous language, no construction is necessary or permitted." *Ed Herman & Sons v. Russell,* 535 N.W.2d 803, 806 (Minn.1995) (citation omitted).

But where statutory language is "unclear or ambiguous, a court may refer to the legislative history surrounding the statute's enactment to ascertain its legislative intent." *Id.* (citation omitted). Where a general law conflicts with a more specific one, care should be taken to effectuate both. Minn.Stat. § 645.26, subd. 1 (2000). But where the conflict proves to be irreconcilable, the more particularized provision prevails as an exception unless the general law was enacted at a later date. *Id.*

This is an issue of first impression. We conclude that the statutory language is ambiguous. Thus, because of the apparent conflict between the two forfeiture provisions, we first briefly examine legislative history in order to best determine legislative intent.

Prior to 1988, forfeiture was governed by a single statute. Minn.Stat. § 609.531 (1986). But "[d]ue to the disparate nature of forfeiture actions, in 1988 the Minnesota legislature chose to divide the various actions and assign their control to individual specific statutes." *Johnson v. Multiple Misc. Items, 1–424,* 523 N.W.2d 238, 239 (Minn.App.1994).[2] Moreover, the 1988 legislature directed that the forfeiture scheme should be "liberally construed" to accomplish its "remedial purposes":

(1) to enforce the law;

(2) to deter crime;

(3) to reduce the economic incentive to engage in criminal enterprise;

(4) to increase the pecuniary loss resulting from the detection of criminal activity; and

(5) to forfeit property unlawfully used or acquired and divert the property to law enforcement purposes.

Minn.Stat. § 609.531, subd. 1a (1988).

In 1993, the legislature amended Minn. Stat. § 609.531, subd. 5a, to include a provision allowing vehicle owners to reclaim seized vehicles by surrendering the certificate of title. Minn.Stat. § 609.531, subd. 5a(b) (Supp.1993). Significantly, in 1995, the legislature amended Minn.Stat. § 609.5312 to include a provision dealing specifically with the offense of fleeing police officers. Minn.Stat. § 609.5312, subd. 4 (Supp.1995).

Thus, following the 1988 restructuring, Minn.Stat. § 609.531 (2000) became the repository of "general rules" governing various forfeiture proceedings including: (1) subdivision 1—providing definitions and a list of designated offenses; (2) subdivision 1(a)—providing a statement of legislative intent; (3) subdivision 4—providing a description of conditions under which property may be seized; (4) subdivision 5—providing a description of law enforcement interests in seized property; (5) subdivision 5a—providing the surrender provision under which an owner may take repossession; and (6) subdivision 6a—providing that a conviction of a forfeitable offense results in a presumption of forfeiture of the property.

**2.** "This revamped section 609.531 provides the general rules for all eight forfeiture statutes." *Id.* The sections as revamped in 1988 are as follows: 609.5311 (1988 & 2000) deals with the forfeiture of property associated with controlled substances; *609.5312 (1988 & 2000) deals with the forfeiture of property "associated with certain specifically enumerated nondrug crimes";* 609.5313 (1988 & 2000) deals with "judicial foreclosure"; 609.5314 (1988 & 2000) deals with "administrative foreclosure of property seized in connection with controlled substances"; 609.5315 (1988 & 2000) deals with the "disposition of forfeited property"; 609.5316 (1988 & 2000) deals with "summary forfeitures"; 609.5317 (Supp. 1989 & 2000) deals with the "forfeiture of real property"; and 609.5318 (Supp.1993 & 2000) deals with the "forfeiture of property used in drive-by shootings." *Id.* at 239 n. 1 (emphasis added).

As both parties acknowledge, Minn.Stat. § 609.531, subd. 5a(b), provides that the owner of a motor vehicle seized *under this section* may seek possession by surrendering the certificate of title. But Stoltzman's argument that this more general forfeiture provision provides an alternative means for securing his truck is weakened by the fact that the truck was not seized pursuant to Minn.Stat. § 609.531, subd. 5a(b). All of the relevant pleadings, as well as the district court's July 10, 2002, order, indicate that the forfeiture was based upon § 609.5312, subd. 4 (2000), which specifically governs forfeitures for fleeing a police officer. Moreover, there is nothing in section 609.531 which suggests that the certificate of title may be surrendered for possession where the seized vehicle was used to flee police. As provided by the 1988 and subsequent legislative changes, that situation is now specifically contemplated by and covered within Minn.Stat. § 609.5312, subd. 4.

■ Thus, although not models of clarity, both statutes can be effectuated harmoniously, particularly when considered in light of the legislative history. Accordingly, we conclude that Minn.Stat. § 609.531 is a repository of general forfeiture rules, while Minn.Stat. § 609.5312, subd. 4, expressly and exclusively governs forfeitures involving fleeing a police officer in a motor vehicle.

Stoltzman notes that section 609.5312, subdivision 4(a), specifically states that "a forfeiture under this subdivision is governed by section[ ] 609.531." Thus, Stoltzman argues, the provisions are consistent and this court should, as a matter of statutory construction, give effect to both provisions, if possible, and allow Stoltzman to proceed under either forfeiture provision. But the portion of the statute Stoltzman quotes is misleading because he has selectively excised from it a significant, and we believe, dispositive modifier. The sentence at issue begins as follows: "*Except as otherwise provided in this subdivision,* a forfeiture ... is governed by section[ ] 609.531...." Minn.Stat. § 609.5312, subd. 4(a) (emphasis added).

Significantly, what follows within the subdivision is the framework for the return of a vehicle used to flee police. The subdivision is silent about any option to surrender the certificate of title for possession; instead, it provides that where a vehicle is seized subject to forfeiture for fleeing police, it shall be returned after a hearing if the district court finds that, (a) the prosecutor has not charged the predicate fleeing felony; (b) the owner has demonstrated a defense to forfeiture; or (c) the owner has demonstrated that seizure creates or would create an undue hardship. Minn.Stat. § 609.5312, subd. 4(b). This language makes it clear that section 609.5312, subdivision 4, is the exclusive mechanism governing the return of a seized vehicle pending forfeiture for fleeing a police officer. Furthermore, even if the provisions are deemed irreconcilable, Minn.Stat. § 645.26, subd. 1, instructs that the more specific provision shall prevail and shall be construed as an exception to the general provision. Thus, section 609.5312, subdivision 4, which specifically governs vehicle forfeitures for fleeing police prevails over section 609.531, subdivision 5a(b), which addresses the general ability to surrender the certificate of title for possession where the vehicle was seized under that section. Moreover, section 609.5312, subdivision 4, was passed later in time and therefore prevails over section 609.531. *See* Minn.Stat. § 645.26, subd. 4 (stating that a more particularized provision prevails as an exception, unless the general law was enacted at a later date).

Our conclusion is further buttressed by the legislative intent expressed in Minn. Stat. § 609.531, subd. 1a, which provides that "[s]ections 609.531 to 609.5318 must be liberally construed to carry out ··· [its] remedial purposes." Here, Stoltzman sought return of the very instrumentality used to commit the crime of felony-level fleeing a police officer in a motor vehicle. Moreover, the crime was committed in a manner that "endanger[ed] life or property," a finding implicit in the district court's July 10, 2002 order. *See* Minn.Stat. § 609.5312, subd. 4(a) (requiring forfeiture where vehicle used in manner that "endanger[ed] life or property"). As the state recognizes, under these circumstances, return of the vehicle while forfeiture proceedings are pending does little to discourage further unlawful use of the actual instrumentality used to commit the crime.

Stoltzman further contends that he has received his punishment by pleading to the sole count in the criminal case and that he is entitled under Minn.Stat. § 609.531, subd. 5a(b), to immediate repossession of the truck. But Stoltzman's position undermines the purpose of forfeiture proceedings and the express legislative intent set forth in Minn.Stat. § 609.531, subd. 1a, which is in part to "deter crime." The very fact that the legislature saw fit to target the specific crime of fleeing a police officer in a motor vehicle contradicts the result Stoltzman urges us to reach.

The only remaining question not directly addressed by the district court or the parties is the component of Minn.Stat. § 609.5312, subd. 4(a), requiring that the flight of a felon "endanger life or property." *Id.* The district court did not make express findings on this point and Stoltzman did not challenge the sufficiency of the district court's findings. *See* Minn. R. Civ. P. 52.01 (requiring findings by district court in absence of jury).

But implicit in the district court's findings is the conclusion that Stoltzman's flight did endanger life or property. Where it appears that the decisive issues have been decided by the [district] court without a jury, the reviewing court is not required to reverse simply because the [district] court might have gone into more detail in the explanation of its findings. *Peterson v. Johnston,* 254 N.W.2d 360, 362 (Minn.1977) (citation omitted). Given that Stoltzman led police on a high-speed chase through the city of St. Paul, which ended only after Stoltzman crashed his truck into a utility pole, an implicit finding of danger to life or property is amply supported in the record and will not be reversed because the district court failed to make such an explicit finding.

Finally, Stoltzman claims that he is entitled to attorney fees because the state acted in bad faith when it sought to forfeit the truck and that the district court erred in declining to consider his motion. But the district court did not reach this issue because it held that Minn.Stat. § 609.5312, subd. 4, controlled. As such, this issue is not properly before us on appeal and we therefore decline to address it. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (holding that we only review matters that were "presented and considered" by the district court). Stoltzman also argues that the state patrol should be precluded from taxing him for storage costs pending this appeal. But Stoltzman concedes that he failed to raise this issue before the district court. Accordingly, this issue is likewise not properly before us and we decline to address it. *Id.* Furthermore, Stoltzman failed to brief this issue. "Where [an appellant] asserts error, but fails to address the error in [one's] appellate brief, the

issue is deemed waived." *State v. Butcher,* 563 N.W.2d 776, 780 (Minn.App.1997), *review denied* (Minn. Aug. 5, 1997) (citation omitted).

### DECISION

The district court correctly interpreted the forfeiture statutes in holding that Minn.Stat. § 609.5312, subd. 4 (2000), specifically and exclusively governs forfeiture proceedings based on a charge of fleeing a police officer in a motor vehicle.

**Affirmed.**