STATE of Minnesota, CAMPAIGN FINANCE AND PUBLIC DISCLOSURE BOARD, Appellant,

v.

MINNESOTA DEMOCRATIC–FARMER–LABOR PARTY, Respondent (A03–52).

State of Minnesota, Campaign Finance And Public Disclosure Board, Appellant,

v.

Minnesota Democratic–Farmer–Labor Party, Respondent (A03–434).

Nos. A03–52, A03–434.

Court of Appeals of Minnesota.

Dec. 9, 2003.

Mike Hatch, Attorney General, Gregory P. Huwe, Assistant Attorney General, St. Paul, MN, for appellant.

Alan W. Weinblatt, Maura J. Shuttleworth, Weinblatt & Gaylord, PLC, St. Paul, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge; HARTEN, Judge; and SHUMAKER, Judge.

## OPINION

WRIGHT, Judge.

Appellant State of Minnesota Campaign Finance and Public Disclosure Board (the board) brought a declaratory judgment action against respondent Minnesota Democratic–Farmer–Labor Party (the DFL). The district court granted summary judgment in favor of the DFL, concluding that the DFL properly reported that expenditures for certain mailings were multicandidate expenditures on behalf of three or more candidates. The district court also awarded attorney fees to the DFL under the Minnesota Equal Access to Justice Act, Minn.Stat. §§ 15.471–.474 (2000). In these consolidated appeals, the board contends that (1) because a major portion of the multicandidate expenditure supported a single candidate, the multicandidate expenditure must be allocated to each candidate in proportion to the benefit received and (2) the award of attorney fees is unwarranted because the board's position is substantially justified. Because the plain meaning of Minn.Stat. § 10A.275 (1998) prohibits multicandidate expenditures from being allocated to individual candidates and because the district court did not abuse its discretion in determining that the board's position was not substantially justified in light of the plain meaning of the relevant statutory provisions, we affirm.

## FACTS

The DFL created two pieces of campaign literature for mailings during the

1998 campaign season. One piece contained an official party sample ballot listing Gail Skare for House of Representatives, "Skip" Humphrey for Governor, Roger Moe for Lieutenant Governor, Mike Hatch for Attorney General, and three other candidates for the respective political offices they sought. The sample ballot contained pictures of Skare, Humphrey, and Hatch, and highlighted voting for Skare on the side with the ballot and mailing address. The other side of the campaign literature depicted a child on a swing with the caption, "Gail Skare Committed to Our Kids."

The second piece of campaign literature sought financial contributions on behalf of Skare, Humphrey, and Hatch, and highlighted Skare's positions on health care. On both pieces of campaign literature, more space was given to Skare's candidacy than to that of the other candidates.

Prior to releasing the mailings, counsel for the DFL sent a letter to the board requesting an advisory opinion as to what would qualify as a sample ballot. The board issued advisory opinion 302 on August 28, 1998, which states, in summary, that only the portion of the campaign literature outlining the sample ballot qualifies for exemption from allocation as a multicandidate expenditure and the balance of the literature focusing on other candidates would be treated as an expenditure for an individual candidate. On February 1, 1999, in response to questions from the DFL as to what qualifies as a fundraising effort on behalf of three or more candidates, the board stated in advisory opinion 305 that material not clearly focused on multicandidate fundraising efforts but included in the multicandidate fundraising materials "may be recognized separately from the multicandidate expenditure."

Prior to the 1998 election, the DFL distributed the two pieces of campaign materials and subsequently reported the expenses as multicandidate expenditures. On March 15, 2000, Steve Sviggum filed with the board a complaint on behalf of the House Republican Campaign Committee, alleging that the DFL sample ballot and fundraising materials cost more to produce and distribute than the DFL reported.[1] As a result of investigating the complaint, the board concluded that each campaign item had a portion that qualified as an exempt multicandidate expenditure under Minn.Stat. § 10A.275 (1998) and a portion that was not exempt. The board ordered the DFL to amend its 1998 report of receipts and expenditures to apportion costs associated with the two mailings "as in kind contributions to the Skare Committee." The DFL declined to do so.

The board initiated a declaratory judgment action in district court. The parties filed cross-motions for summary judgment on stipulated facts. The district court granted the DFL's motion for summary judgment and dismissed the case, concluding that (1) Minn.Stat. § 10A.275, which governs multicandidate political-party expenditures, "is unambiguous and not subject to interpretation by the Board" and (2) the DFL's report of expenditures complied with the statute.

The DFL moved for attorney fees and costs under the Minnesota Equal Access to Justice Act and was awarded attorney fees of $24,456 and costs of $630. The board appealed the summary judgment while the fee motion was pending in district court and later appealed the award of attorney

---

**1.** This portion of the complaint was found to be without merit by the board and is not at issue here.

fees and costs. These cases were consolidated.

## ISSUES

I. Did the district court err in determining that the DFL's report of expenditures complied with Minn.Stat. § 10A.275 (1998)?

II. Did the district court err in awarding attorney fees and costs under the Minnesota Equal Access to Justice Act?

## ANALYSIS

When the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion, which we review de novo. *Lefto v. Hoggsbreath Enters., Inc.,* 581 N.W.2d 855, 856 (Minn.1998).

## I.

This dispute requires us to interpret Minn.Stat. § 10A.275 (1998).[2] When interpreting a statute, we must "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2002). In doing so, we first determine whether the statute's language, on its face, is ambiguous. *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001). We construe words and phrases according to their plain and ordinary meaning. *Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608 (Minn.1980). A statute is ambiguous only when its language is subject to more than one reasonable interpretation. *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999). When the legislature's intent is clearly discernable from a statute's plain and unambiguous language, statutory construction is neither necessary nor permitted, and we apply the statute's plain meaning. Minn.Stat. § 645.16; *Ed*

*Herman & Sons v. Russell,* 535 N.W.2d 803, 806 (Minn.1995).

█ The statutory scheme at issue here regulates campaign contributions from political parties to candidates for public office and expenditures by those candidates. Section 10A.25 limits spending by candidates who agree to receive a public campaign funding subsidy, and section 10A.27, subdivision 2, limits the amount a political party may contribute to a candidate. Minn.Stat. §§ 10A.25, .27, subd. 2 (1998). In 1998, the political-party contribution limit was $5000 for a state legislative candidate, and multicandidate expenditures were required to be allocated on a reasonable cost basis among the individual candidates, unless the expenditure or contribution benefited three or more candidates. Minn.Stat. §§ 10A.22, subd. 5; .27, subd. 2; .275, subd. 1 (1998). Section 10A.275, subdivision 1, provides, in relevant part:

> *Notwithstanding any other provisions of this chapter,* the following expenditures by a state political party ... *shall not be considered contributions to or expenditures on behalf of any candidate* for the purposes of section 10A.25 or 10A.27, *and shall not be allocated to any candidates* pursuant to section 10A.22, subdivision 5; ...
>
> (b) expenditures for the preparation, display, mailing or other distribution of an official party sample ballot listing the names of three or more individuals whose names are to appear on the ballot; ...
>
> (d) expenditures for any political party fundraising effort on behalf of three or more candidates[.]

Minn.Stat. § 10A.275, subd. 1 (emphasis

---

**2.** For the purpose of our analysis, we refer to the statutory provisions in effect in 1998, the year in which the DFL's multicandidate expenditures at issue here took place.

added).[3] In total, five exceptions to the allocation requirement are set forth in Minn.Stat. § 10A.275, subd. 1. So that compliance with the campaign contribution and expenditure limits can be monitored, Minn.Stat. § 10A.20, subd. 3(g), requires political parties to file reports disclosing expenditures in excess of $100 within one year, including those made on behalf of candidates for political office.

■ The board argues that, in order to give full effect to the statutory scheme governing campaign expenditures, Minn. Stat. § 10A.275 must be interpreted to require proportional allocation when a multicandidate expenditure benefits primarily one candidate. Failure to allocate a portion of the multicandidate expenditure to the primary candidate beneficiary, the board asserts, renders section 10A.275 in conflict with the statute's legislative intent. We disagree.

After careful review, we conclude that the statute's legislative intent, as expressed in the plain, unambiguous language of the statute, is to exempt multicandidate expenditures by political parties on behalf of three or more candidates from the allocation requirement. Two of the five exceptions to the allocation requirement set forth in section 10A.275, subdivision 1, apply to the DFL expenditures for campaign literature at issue here. Section 10A.275, subdivision 1, specifically provides that, "[n]otwithstanding any other provisions," such expenditures "shall not be considered contributions to or expenditures on behalf of any candidate for the purposes of section 10A.25 [setting candidate spending limits] or 10A.27 [setting political party spending limits], and shall not be allocated to any candidates pursuant to section 10A.22, subdivision 5." Applying the plain meaning of the statutory language, section 10A.275, subdivision 1, unambiguously proscribes allocation of multicandidate expenditures under these circumstances. It is undisputed that one of the items at issue here is "an official party sample ballot listing the names of three or more individuals" who appeared on the 1998 ballot. Minn.Stat. § 10A.275, subd. 1(b). And the other item solicited funds for the DFL "on behalf of three or more candidates." *Id.*, subd. 1(d). Political-party expenditures for such items are exempt from the allocation requirements of section 10A.22, subdivision 5. *See* Minn. Stat. § 10A.275, subd. 1.

The board argues that there is nothing in the statute prohibiting it from "deciding that an expenditure should be treated in part as a multicandidate expense and in part as a contribution to a specific candidate." Citing the 1999 amendment to Minn.Stat. § 10A.20, subd. 3(g), the board maintains that a portion of an expenditure may be allocated to the primary candidate beneficiary. *See supra* n. 3 (discussing 1999 amendment to Minn.Stat. § 10A.20, subd. 3(g)). The amendment, which was enacted after the expenditures at issue here, provides that "[a] reporting entity making an expenditure on behalf of more than one candidate for state or legislative

---

**3.** In 1999, the legislature repealed Minn.Stat. § 10A.22, subd. 5, and amended Minn.Stat. § 10A.275 by replacing the reference to section 10A.22, subdivision 5, with section 10A.20, subdivision 3(g).1999 Minn. Laws ch. 220, § 35. In repealing section 10A.22, subdivision 5, the legislature moved the 1998 statutory provision requiring allocation of multicandidate expenditures among the candidates on a reasonable cost basis from section 10A.22, subdivision 5, to the end of section 10A.20, subdivision 3(g). *See* 1999 Minn. Laws ch. 220, §§ 23 (amending Minn.Stat. § 10A.20, subd. 3(g)), 51 (repealing Minn. Stat. § 10A.22, subd. 5). Even with these statutory changes, however, section 10A.275, subdivision 1, maintains the same five exceptions to the allocation requirement of section 10A.20, subdivision 3(g), for multicandidate expenditures that were in effect in 1998.

office must allocate the expenditure among the candidates on a reasonable cost basis and report the allocation for each candidate." 1999 Minn. Laws ch. 220, § 23. This provision, however, mirrors the language of Minn.Stat. § 10A.22, subd. 5, which was in effect at the time of the expenditures for the 1998 general election, and which is exempt from the allocation requirement for multicandidate expenditures by operation of Minn.Stat. § 10A.275, subd. 1. Accordingly, even with the statutory revisions, the board lacks the authority to interpret the statute to require allocation under the circumstances presented here.

We are mindful of the board's concerns that, in the absence of an allocation requirement, multicandidate expenditures by political parties on behalf of three or more candidates that benefit primarily one candidate will circumvent meaningful campaign spending limits. Where, as here, the intention of the legislature is clear from the statutory language, resolution of the board's concerns is appropriately the province of the legislature, not the judiciary. In light of the statute's lack of ambiguity, we decline to ignore the language employed by the legislature in order to infer legislative intent from evidence that simply is not present.

Because Minn.Stat. § 10A.275, subd. 1, prohibits allocation of multicandidate expenditures by a political party for sample ballots listing three or more candidates and fundraising efforts on behalf of three or more candidates, the DFL's expenditures and reports complied with the statute.

## II.

■ We review awards of attorney fees and costs under the Minnesota Equal Access to Justice Act (MEAJA) with an abuse-of-discretion standard. *Donovan*

*Contracting of St. Cloud, Inc. v. Minn. Dep't of Transp.*, 469 N.W.2d 718, 719–20 (Minn.App.1991), *review denied* (Minn. Aug. 2, 1991). This standard of review is the same standard of review employed by the United States Supreme Court in cases involving attorney fees awarded pursuant to the federal Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (2003).

A district court has abused its discretion when it has "exercised its discretion in an arbitrary or capricious manner, or based its ruling on an erroneous view of the law." *State by Humphrey v. Philip Morris Inc.*, 606 N.W.2d 676, 685 (Minn.App.2000) (quotation omitted), *review denied* (Minn. Apr. 25, 2000). In determining whether the district court has abused its discretion, we review the district courts findings to ascertain whether they are supported by the record. *Mehralian v. State*, 346 N.W.2d 363, 365 (Minn.App.1984), *review denied* (Minn. July 26, 1984). Findings of fact are clearly erroneous only when we are left with the definite and firm conviction that a mistake has been made. *Gjovik v. Strope*, 401 N.W.2d 664, 667 (Minn.1987); *see also United States v. True*, 250 F.3d 410, 422 (6th Cir.2001) (defining abuse-of-discretion standard for reviewing attorney fees awarded under EAJA).

■ Under the MEAJA, if the prevailing party shows that "the position of the state was not substantially justified," the district court shall award fees and costs. Minn.Stat. § 15.472(a) (2002). As defined by the MEAJA, "substantially justified" means "that the state's position had a reasonable basis in law and fact[ ] based on the totality of the circumstances before and during the litigation or contested case proceedings." Minn.Stat. § 15.471, subd. 8 (2002). Minnesota courts have looked to federal caselaw addressing the EAJA to define the phrase further. *Donovan Contracting*, 469 N.W.2d at 720. In *Pierce v.*

*Underwood*, the United States Supreme Court defined "substantially justified" as "[m]ore than merely undeserving of sanctions for frivolousness[.]" 487 U.S. 552, 556, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). The board argues that, even if we conclude that the DFL complied with the statute, the board's position was supported by a reasonable legal basis, and the dispute was genuine.

The district court concluded that the board's position was based on a misreading of the statute's clear and unambiguous prohibition against allocation of multicandidate expenditures by a political party on behalf of three or more candidates. In light of the board's determination that allocation is required notwithstanding the plain language of Minn.Stat. § 10A.275, subd. 1, we conclude that the board's position did not have a reasonable basis in law and fact and, therefore, was not substantially justified. Accordingly, the district court did not abuse its discretion in awarding the DFL attorney fees and costs under the MEAJA.

## DECISION

Because the plain meaning of Minn.Stat. § 10A.275, subd. 1 (1998), proscribes allocation of five specific types of multicandidate expenditures made by a political party on behalf of three or more candidates, the DFL properly reported its expenditures. The board's position was not substantially justified, and the district court properly awarded attorney fees and costs to the DFL under the MEAJA.

**Affirmed.**